Mary E. KESTNER, Plaintiff-Respondent,

and

Bailey Kestner, Plaintiff,

v.

Lucy Shepard JAKOBE, Defendant-Appellant.

No. 8545.

Springfield Court of Appeals.

Missouri.

Feb. 7, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 24, 1967.

Albert C. Lowes, Buerkle & Lowes, Jackson, for defendant-appellant.

C. H. Parsons, Jr., Dexter, for plaintiff-respondent.

PER CURIAM.

This is an action for personal injuries sustained by plaintiff Mary Kestner when the automobile in which she was riding collided with another being driven by defendant Lucy Jakobe. Initially, the plaintiffs joined Mrs. Jakobe and Mr. John Litzler, the host driver, as codefendants. Prior to trial, the cause was dismissed as to defendant Litzler, and the jury found against plaintiff Bailey Kestner on his claim for medical expenses and loss of services. Plaintiff Mary Kestner had a verdict and judgment against Mrs. Jakobe in the amount of $3,449.00, and this appeal followed.

On the occasion in question, Mrs. Kestner and her husband were riding in Mr. Litzler's automobile, traveling south on Highway 25 near Malden, Missouri. The casualty occurred when Mrs. Jakobe, going north, attempted to turn left in front of the Litzler vehicle in order to enter a private driveway on the west side of the road. Very concisely, plaintiffs' version of the accident was that Mrs. Jakobe turned suddenly in front of Mr. Litzler when the two vehicles were no more than 40 feet apart, while defendant's version was that she began her turn while the oncoming Litzler vehicle was still "half a block" to the north, having first given an adequate, visible warning of her intention to turn some 100 to 150 feet south of the intersection of the driveway and the highway. The plaintiffs submitted their case on Mrs. Jakobe's negligence in failing to yield the right of way to an approaching vehicle at a time when turning left would create an immediate hazard. As we say, the jury resolved the issues for plaintiff Mary Kestner.

◼ The appellant has meticulously briefed and argued eight assignments of error. Some of these points, quite frankly, are overstated and hypertechnical, while others appear to have some intrinsic merit. Appellant's principal argument in this court has to do with a release which the plaintiffs gave Mr. Litzler a short time after the

accident; she insists that the release is a complete bar to this action. We shall limit our opinion to a determination of those questions essential to a proper disposition of the appeal in this court. Logsdon v. Duncan, Mo., 293 S.W.2d 944, 946 [1]; Fidelity and Casualty Co. of N. Y. v. Glass, Mo.App., 327 S.W.2d 538, 540 [1].

Five days after the accident, the plaintiffs executed a document, styled a "Release of all Claims," in the following form:

"Know all men: For and in consideration of the payment to me/us at this time of the sum of Fifty dollars and no/100 Dollars ($50.00), the receipt and sufficiency of which is hereby acknowledged, I/we, being of lawful age, do hereby, separately and jointly, release, acquit and forever discharge Mr. John Litzler of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting from an accident that occurred on or about the 13th day of February 1965 at or near Malden, Missouri.

I/we hereby declare and represent that I/we was/were injured and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the person, firm or corporation released, by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto and the terms of this release are contractual and not a mere recital.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our free act for the purpose of making full and final compromise, adjustment and settlement of the injuries and damages mentioned above.

WITNESS my/our hand and seal this 18th day of February 1965.

In presence of

/s/ Jim Grimes

X /s/ Mary Kestner Age 52

/s/ Bailey Kestner Age 74"

As indicated, the plaintiffs originally joined both Mr. Litzler and Mrs. Jakobe as defendants, and each defendant, answering separately, set up the release in bar of the action. By separate reply to each answer, the plaintiffs admitted execution of the release, but alleged that it was invalid because it was procured by fraudulent representation. In a series of pre-trial motions, the defendants called the trial court's

attention to the release, praying alternatively that trial of the issues of liability be stayed pending a determination of the validity of the release, or that the action be dismissed. The trial court refused all these motions, and plaintiffs dismissed their case as to Mr. Litzler before the trial began.

Upon trial, very little was shown in evidence concerning the release. We gather that it was executed at plaintiffs' home on Thursday following the accident, which occurred on Saturday; that it was procured by a claims representative for some insurance carrier on Mr. Litzler's behalf; that some time after the release was executed Mr. Litzler's carrier paid the plaintiffs an *additional* sum, and that possibly a subsequent written instrument was executed. Plaintiffs' testimony indicates that they are only semi-literate, each having "got in the third grade," but nothing of the circumstances attending execution of the release appears, other than that plaintiffs did sign the release and did receive the $50.00, plus an additional $399.00, all of which was paid on Litzler's behalf. No evidence was presented which actually tends to develop any grounds for avoiding the release. However, during the course of the trial, the following exchange of remarks occurred after counsel had finished his interrogation of plaintiff Bailey Kestner:

"MR. LOWES: Judge, I have no other questions of this witness, I just want to make sure I have the record right on the question of this release. Now, we had intended to tender an instruction on whether or not the jury would find that this release covered our man, and I've had a conversation outside of the trial with the Court and the Court has indicated it feels that the release is already in here by admission and it's a question of law, *and you have ruled it's a question of law and that the release does not cover Mrs. Jakobe.* Now, do I understand the Court right?

THE COURT: I think you do.

MR. LOWES: All right. So then it won't be necessary—that's been the basis

of the Court's ruling when I mention the subject of release?

THE COURT: Yes, sir. *A release as such has no part in this suit, that is the Court's ruling.*" (Our emphasis.)

The question presented is whether, assuming its validity, the release given to Mr. Litzler also operated to discharge Mrs. Jakobe. Upon the record developed and filed here, we think it did. A claimant may settle with one joint tort-feasor and release him, and still hold and sue the others for the balance of his damages, but the claimant may have but one satisfaction, and if the release is in full of all damages, as distinguished from a release of one codefendant or joint tort-feasor, then the cause of action is dead and cannot be revived. New Amsterdam Casualty Co. v. O'Brien, Mo., 330 S.W.2d 859, 864–865; Booker v. Kansas City Gas Co., 231 Mo.App. 214, 219, 96 S. W.2d 919, 923 [2, 3]. Granted that the application of this rule may produce varying results in varying factual situations, New Amsterdam Casualty Co. v. O'Brien, supra, 330 S.W.2d at 865 [3], there are no extrinsic facts in evidence here, nor any language in the release itself, which indicates that the plaintiffs claimed or demanded anything less than full satisfaction. The instrument recites in repetitious but positive terms that the money was received in consideration of the release and discharge of all claims and demands, without any limitation or reservation whatever, and further recites that it was executed to effect a full and final compromise. In our view, the release must be taken as a release of the whole cause of action. New Amsterdam Casualty Co. v. O'Brien, supra, 330 S.W.2d at 865–866 [4]; Abbott v. City of Senath, Mo., 243 S.W. 641, 642–643 [3]. Contrary to respondent's position, it is not determinative that the release was given to Litzler only, for he was liable, if at all, for the whole of plaintiffs' damages. Abbott v. City of Senath, supra, 243 S.W. at 643.

On the other hand, if the release was obtained by fraudulent representation,

it is either void or voidable, depending on the nature of the fraud. Nelson v. Browning, Mo., 391 S.W.2d 873, 877 [2] [3]; Watson v. Bugg, 365 Mo. 191, 195, 280 S.W.2d 67, 69 [1], 53 A.L.R.2d 743, 746. Plaintiffs had the burden of proving the release invalid, since they admitted its execution, Foster v. Aetna Life Ins. Co. of Hartford, Conn., 352 Mo. 166, 174, 176 S.W.2d 482, 485 [4, 5], but they were entitled to have its fraudulent or wrongful procurance submitted to the jury along with all other issues in the case, with a general verdict on all issues. Watson v. Bugg, supra, 365 Mo. at 196, 280 S.W.2d at 69–70 [3], 53 A.L.R. 2d at 747. The trial court, by its ruling that the release did not affect Mrs. Jakobe, rendered it apparently unnecessary for plaintiffs to develop their tendered issue of fraudulent procurance, indicating that it would not hear such proof if it were presented. Consequently, we have a record before us which does not present all the relevant facts, and we can make no final adjudication. We may further note that the record indicates an agreement subsequent to the release in question, upon the payment of an additional consideration by Litzler or on his behalf. This subsequent agreement is not in evidence, and we will not speculate upon its nature or effect on the rights of the parties, but of course an agreement of compromise can be modified or rescinded by the parties like any other contract, United States v. Dake, D.C.N.Y., 42 F.Supp. 833, 838 [7]; 15A C.J.S. Compromise and Settlement § 29, pp. 242–243, and for this further reason, we cannot confidently say the parties' rights became immutably fixed upon execution of the release in evidence. The trial court, by its erroneous view of the law, prevented the merits of the case from being fully developed, and as to plaintiff Mary Kestner we believe the cause must be reversed and remanded for a new trial. Woodlock v. Aetna Life Ins. Co., Mo., 225 S.W. 994, 1002 [4]; Robinson v. Unit Iron Co., Mo.App., 31 S.W.2d 232, 233–234 [2]; 5B C.J.S. Appeal and Error § 1940, pp. 482–486. Plaintiff Bailey Kestner, on the other hand, was actually asserting a separate, distinct cause of action. Rea v. Feeback, Mo., 244 S.W.2d 1017, 1019 [2]. He has not appealed from the verdict adverse to him. Therefore, following retrial of the cause as to plaintiff Mary Kestner and because there can be but one judgment in the action, the trial court will enter a judgment compatible with the verdict returned on the retrial issues and one determining the cause in favor of the defendant and against the plaintiff Bailey Kestner.

All concur.