Vern D. LIBERTY et al., Appellants,

v.

J. A. TOBIN CONSTRUCTION CO., INC., Respondent.

No. KCD 26483.

Missouri Court of Appeals, Kansas City District.

Aug. 5, 1974.

Sloan R. Wilson, Hill, McMullin & Wilson, Kansas City, for appellants.

Cecil L. Caulkins, Reggie C. Giffin, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent.

Before PRITCHARD, P. J., and WASSERSTROM and SOMERVILLE, JJ.

PER CURIAM.

This is an appeal from a summary judgment entered in the court below, pursuant to Rule 74.04, V.A.M.R., upon defendant's motion in an action for damages for personal injuries. The motion was submitted to the court below upon the pleadings, requests for admissions, responses thereto, other documentary evidence, and the legal suggestions of the parties. The facts are not in dispute and although the court below made no specific findings of fact and conclusions of law, it is clear from the record that the summary judgment was entered because, as a matter of law, plaintiffs' claims were barred because of previously executed releases. We affirm.

Certain background facts in this case must be briefly outlined.

On April 28, 1969, the defendant was engaged in a highway construction project in connection with Interstate Highway No. 29 in Platte County, Missouri. In connection with this project the defendant had established a detour for north and southbound traffic in the vicinity of 5800 N. 71 Highway in order to route such traffic around certain of its work. On that date at about 9:24 o'clock p. m., the plaintiff, Vern D. Liberty, was operating his 1963 Chevrolet in a southerly direction upon the detour. Riding in his car were Ervin and Mary Ruth, husband and wife and coplaintiffs here. At that time and place, one Aaron C. Butler was operating his 1968 Ford automobile in a northerly direction on said detour. Riding with him were his wife Katherine and his son Bracken. None of the Butlers are parties to this action.

The Liberty and Butler cars came into collision and as a result Liberty and the Ruths sustained personal injuries, as did the driver and occupants of the Butler automobile.

Sometime prior to June 13, 1969, a suit for damages was filed in Platte County, Missouri[1] wherein Aaron, Katherine and Bracken Butler were plaintiffs, and Vern D. Liberty was defendant. In that suit, Liberty filed a counterclaim charging Butler with various acts of negligence in the operation of his automobile; setting forth in detail the personal injuries alleged to have been sustained by him in the collision of April 28, 1969; and asking for money damages.

On December 11, 1970, Vern D. Liberty, plaintiff here, executed a release whereby he released Aaron and Katherine Butler for his injuries for the sum of $300.00, and on December 14, 1970, his counterclaim in Butler v. Liberty was dismissed "with prejudice to the further prosecution of said defendant's claims or causes of action as set out in said Counter-Claim,[2] * * *". More specific reference to the terms of the release signed by Liberty will be discussed hereafter.

Sometime prior to June 30, 1970, a suit had been instituted by Ervin and Mary Ruth against Aaron Butler and Vern D. Liberty in Platte County, Missouri for damages for personal injuries alleged to have been sustained by the Ruths in the collision of April 28, 1969. In the Ruths first amended petition in that action, filed June 30, 1970, Butler and Liberty were charged with joint and concurrent negligence which resulted in the collision and resulting damage.

On October 30, 1970, Ervin Ruth and Mary Stella Ruth executed a joint release for the consideration of $6750.00, releasing Vern Liberty. This release is a part of the record before us and more specific reference to its terms will be discussed hereafter.

Apparently, the Ruths also compromised their claims against Butler, because on No-

1. The record before us does not disclose the exact date.

2. The stipulation recites that the Butlers' claims against Liberty had previously been dismissed with prejudice.

vember 4, 1970, their actions against Liberty and Butler and Platte County were dismissed with prejudice.

On May 27, 1971, the present action was instituted by the Ruths and Liberty, wherein the defendant construction company was charged with various acts of negligence in the establishment and maintaining of the detour upon which the collision of the Liberty and Butler automobiles occurred, which tortious acts, it is charged, directly caused such collision, injuries and damage. In answer, the defendant pleaded the previous compromises, settlements and releases as an affirmative defense in bar of the claims.

In their response to defendant's request for admissions, the plaintiffs admitted the authenticity of the pleadings and releases but asserted that the releases were limited and not general in scope and did not constitute any bar to their claims.

On September 15, 1972, defendant filed a motion for summary judgment under Rule 74.04 upon the basis that the releases were general in nature and satisfied and extinguished all claims arising out of the April 28, 1969 collision.

One further fact in the record requires mention. On October 30, 1972,[3] the plaintiffs executed documents entitled "AMENDED CONTRACT OF RELEASE" wherein their claims against J. A. Tobin Construction Company were specifically reserved and excluded as a subject of the compromise and settlement of the claims asserted in the Platte County suits.

The plaintiffs assert that the court below erred in entering summary judgment for the defendant, not upon the basis that any genuine issue of material fact exists, but for the reasons that, 1) the original Liberty release of December 11, 1970 and the Ruth release of October 30, 1970 were not in full settlement of all claims against all

persons but were only partial releases limited only to the parties to those contracts, and 2) the amended contracts of release executed by the plaintiffs on October 30, 1972 made the question of the scope or effect of the prior release moot.

It is clear from this record that the various claims and counterclaims in this case were based upon the theory that Liberty, Butler and Tobin were joint tortfeasors whose combined negligence brought about the collision of April 28, 1969 between the Liberty and Butler automobiles. Based upon this premise certain fundamental principles of tort law controlled the decision of the court below as well as ours upon this appeal.

██ One damaged by the negligence of two or more joint tortfeasors may, at his option, proceed against one or more of them individually or collectively to recover his damages, but he can recover only one satisfaction for his loss or damage. At common law a settlement with one joint tortfeasor operated as a discharge of the other joint tortfeasors.

 In 1855, a statute was adopted in Missouri (R.S.1855, p. 649, § 8) which provided that joint tortfeasors who were named as defendants and against whom a joint judgment was rendered could enforce contribution. This statute was amended in 1915 by an addition to the contribution provision to permit an injured party to effect a settlement with one joint tortfeasor and to proceed against other joint tortfeasors for the balance of his damages. This statute is now Section 537.060 RSMo 1969, V.A.M.S. This 1915 amendment was intended to abrogate the common law rule above referred to, but did not affect the rule that there could be only one satisfaction for the injury and damage. Abbott v. City of Senath, 243 S.W. 641, 642 (Mo. 1922). This rule is based upon the sound

---

3. This was exactly two years after the execution of the original Ruth release, over one year and ten months after the execution of the original Liberty release, and 15 days after the defendant's motion for summary judgment.

principle that an injured person's right to recover for his injuries, whether caused by one or more wrongdoers, is basically single, " * * * and if he receives satisfaction for same once, whether in court or out of court, from one wrongdoer, he cannot recover any further amount from another wrongdoer * * *." Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 556 [26, 27] (1931). It has been repeatedly stated and is the respected law in Missouri that once such a full settlement and satisfaction is made *then the cause of action is extinguished and cannot be revived.* New Amsterdam Casualty Co. v. O'Brien, 330 S.W.2d 859 (Mo.1960); Booker v. Kansas City Gas Co., 231 Mo.App. 214, 96 S.W.2d 919, 923 [3] (1936); Abbott v. City of Senath, supra; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825, 833 (1938); Roberts v. Atlas Life Insurance Co., 236 Mo.App. 1162, 163 S.W.2d 369, 374 (1942); McEwen v. Kansas City Public Service Co., 225 Mo.App. 194, 19 S.W.2d 557, 559 (1929); Hails v. Systems Constructors, Inc., 407 S.W.2d 583 (Mo.App.1966).

In the light of this statute and the definitive decisional rules above referred to, the courts have clearly pointed the way whereby an injured or damaged party may reach a partial satisfaction with one joint tortfeasor without destruction of his right to pursue other joint tortfeasors. This result may be accomplished only by specific and clear limitation of the intended scope of the settlement where such consideration is described as partial, rights reserved as to remaining tortfeasors, or other appropriate language. Black v. Sanders, 414 S.W.2d 241 (Mo.1967); Birmingham v. Kansas City Public Service Co., 235 S.W.2d 322 (Mo.1950). In modern practice, such documents are sometimes termed "Covenants Not to Sue".

Such reservation or limitation must be expressed clearly and unmistakably since the law favors fair settlements, compromises and disposal or "repose" of litiga-

tion. In determining whether a release is general and disposes of the whole matter, on the one hand, or limited, on the other hand, it seems that the deciding factor of interpretation is *what* is released not *who* is released by the document. The fact that only *one* tortfeasor is *named* in the release is not conclusive as to its character. Each tortfeasor is liable for the whole damage. Abbott v. City of Senath, supra, at 243 S.W. 1. c. 643; New Amsterdam Casualty Co. v. O'Brien, supra; Booker v. Kansas City Gas Co., supra; Kestner v. Jakobe, 412 S.W.2d 205, 208 [2, 3] (Mo. App.1967). If, therefore, the release by its terms disposes of the whole subject matter, or the cause of action involved, the matter is ended or "dead" even though only one tortfeasor is specifically named in the instrument of settlement. Kestner v. Jakobe, supra.

The initial problem of the court below (and ours) is, assuming the validity of the releases here involved, did they operate to discharge the defendant J. A. Tobin Construction Company as well as its joint tortfeasors named in the releases?

The Ruth release of October 30, 1970 releasing their coplaintiff, Liberty, clearly and unequivocally releases their whole cause of action. In pertinent part, in consideration of $6750.00, it releases Vern D. Liberty, his heirs, executors, administrators, agents and assigns and:

> " * * * *all other persons, firms or corporations* liable or who might be claimed to be liable, * * * from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known or unknown, * * * which have resulted or may in the future develop from an accident which occurred on or about the *28th* day of *April, 1969* at or near *5800 N. 71 Highway, Kansas City, Missouri.*" (Emphasis added)

After the orthodox recitations of reading, understanding and voluntary action, the Ruth release states it is executed

"* * * for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

The Stipulation for Dismissal filed in the Ruth case in Platte County provided that the case be dismissed with prejudice

"* * * against the institution and prosecution by plaintiffs of any other or further action or actions involving *any* of the matters referred to in plaintiff's petition for damages now on file in said cause."

Despite the concession in appellants' Ruth brief that "There is no question in this case that there was a full and complete settlement, and that there was a release of the whole world, in effect.", we would be irresistibly impelled to hold that under the terms of these documents the trial court very properly sustained the motion for summary judgment for the defendant as to the Ruth claims.

 We come now to an appraisal of the terms and effect of the Vern Liberty release of December 11, 1970 in his counterclaim in the Platte County case. After stating the consideration of $300.00 and a full release of Aaron Butler and Katherine Butler and the Dairyland Insurance Company, their heirs, administrators, executors, successors and assigns, it stated in pertinent part:

"* * * from *all claims,* demands, damages, actions, rights of action, of whatever kind or nature which I/We now have or may hereafter have arising out of, in consequence of or on account of *all injuries* to person, including those known and unknown, developed or undeveloped, and unforeseen or unexpected developments and consequences of known injuries * * * *resulting to me/us* in any way *from an accident* which occurred on or about the *28th* day of *April, 1969 at or near 5800 North 71 Highway, Kansas City, Mo.*

I/We hereby accept said sum as a compromise and settlement of all claims on account of the dispute between the parties hereto as to whether the above named parties are liable to me/us or not, *and also as to the nature, extent and permanency of the injuries sustained by me/us."* (Emphasis added)

It will be noted that, while this release does not contain the phrase "all other persons, firms or corporations" as does the Ruth release, it is in most general terms covering "all injuries" arising from the specific accident involved. No reservation of rights or specific words are contained which would indicate any limited character to be attributed to this release. A comparison of the allegations contained in the Liberty counterclaim as to his injuries with those contained in his petition in the case at bar, discloses almost an exact identity. The release in question can, in no practical or legal sense, be considered as limited.

 This leaves for our consideration only the charge that the court below erred in refusing to hold that the amended contracts of release of October 30, 1972, converted the legal meaning of the general releases of 1970 into *moot issues,* ineffective to influence judicial determination of the motion for summary judgment. We do not agree.

If any weight is to be given to the principles, above noted, that *general releases* terminate all causes of action against joint tortfeasors, whether specifically named as releasees or not, or, that the naming of *only one joint tortfeasor in such general release* does not constitute such a limitation or reserve any right to sue other joint tortfeasors, we must support the trial court's ruling that J. A. Tobin Construction Co., defendant here, was also released, and the plaintiffs' causes of action are barred.

Appellants rely upon three authorities and a C.J.S. text, all of which we have carefully reviewed. The case of United

States v. Dake, D.C.N.Y., 42 F.Supp. 833, we find not authoritative nor in point. It basically involved a commercial transaction and accounting obligations under a contract with reference to the purchase and sale of milk, and not joint tortfeasors.

In addition, the appellants cite two opinions (in the same case) of the Springfield district of our court. In the first of these, Kestner v. Jakobe, 412 S.W.2d 205 (Mo. App.1967), that court held that a release of one joint tortfeasor (Litzler), general in terms, released all other joint tortfeasors and the court in so doing followed the rulings in New Amsterdam Casualty Co. v. O'Brien, supra, and Abbott v. City of Senath, supra, and Booker v. Kansas City Gas Co., supra, and held that such release also discharged any liability of defendant Jakobe. There was a subsequent agreement between Kestner and Litzler supported by an additional consideration. This agreement was not in evidence and the court properly refused to speculate upon its nature or affect on the rights of the parties, but stated as pure *dictum*, 412 S.W.2d at l. c. 209:

> " * * * but of course an agreement of compromise can be modified or rescinded by the parties like any other contract, * * * "

But in a later appeal in the same case, Kestner v. Jakobe, 446 S.W.2d 188 (Mo. App.1969) the Springfield court, again adhering to the principles of New Amsterdam Casualty and other cases cited supra, clarified and in effect repudiated the above *dictum* in its first opinion in *Kestner* by stating l. c. 196:

> "This court did state in its former opinion that an agreement of compromise can be modified or rescinded by the parties like any other contract, * * * but upon reconsideration we find that statement too broad and ill-considered in context. * * * "

We also find the quoted *dicta* in the first *Kestner* case "too broad" and not binding

in any sense in the case before us. We, therefore, hold that the subsequent agreements, "Amended Contract of Release" do not have any impact or weight upon our decision.

For the reasons herein stated, we affirm the summary judgment rendered below.