**Enola SWOPE, a minor, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION et al., Defendants.**

**No. 77–0544–CV–W–3.**

United States District Court,
W. D. Missouri, W. D.

Feb. 9, 1978.

Max Von Erdmannsdorff, Von Erd-mannsdorff, Zimmerman, Gunn & Trimble, Kansas City, Mo., P. Wayne Kuhlman, Liberty, Mo., for plaintiffs.

Thomas O. Baker, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for General Motors.

James W. Benjamin, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for Ward School Bus.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RUSSELL G. CLARK, District Judge.

In this product liability case founded upon diversity and removal jurisdiction, plaintiff Enola Swope, a minor, by and through her co-plaintiff and mother, seeks recovery from the defendant manufacturers for injuries she received in a school bus accident occurring February 16, 1973. Plaintiffs have previously brought an action for negligence in the Circuit Court of Clay County, Missouri against the driver of the bus and her employer. That action resulted in a monetary settlement between the parties as reflected in a document signed by the parties to that suit. Defendants General Motors and Ward School Bus Manufacturing Corporation now assert that this settlement dated July 12, 1976, operates as a full release, satisfaction and accord and that plaintiffs' cause of action against these defendants was extinguished by that document. Plaintiffs argue first that defendant GM is procedurally unable to raise these affirmative defenses for its failure to raise them originally in its answer to plaintiff's complaint. Plaintiffs amended their complaint on August 30, 1977, and defendant General Motors raised its affirmative defenses by motion for dismissal or in the alternative for summary judgment. The procedural issue of whether an affirmative defense not raised in the original answer by the defendant General Motors may be raised in answer to the amended complaint has been obviated by the co-defendant Ward Company raising the same issue in its first answer. Accordingly, the Court now

turns to the merits of the release, its scope and its effect upon this action against the manufacturers of the school bus.

Defendants have moved for dismissal of this action or in the alternative, for summary judgment on the issue of the legal effect of the release. A hearing was held on this issue on February 2, 1978, at which plaintiffs and defendants were afforded an opportunity to present evidence as well as present their legal arguments as briefed in their respective motions and memoranda. Based upon the pleadings and motions, and the testimony and exhibits produced at the hearing, the Court, for the reasons stated herein, hereby grants the motion of the defendants for summary judgment.

■ The defendants in this action, together with the driver of the school bus and her employer, may all be classified as "joint tortfeasors". Under Missouri law, this term is used to describe those parties committing wrongful acts which are separate and distinct but concur in a point of time and directly cause a single injury. *Allen v. United States,* 370 F.Supp. 992, 1009 (E.D. Mo.1973), citing to *Mails v. Kansas City Public Service Co.,* 51 F.Supp. 562, 564 (W.D.Mo.1943). Plaintiffs' complaint lists the injuries of Enola Swope as compression skull fracture, deep cuts on forehead, lacerations, bruises, contusions, strained muscles and ligaments, and psychological trauma and traumatic epilepsy. These injuries may be considered as "single" for the purposes of the definition of "joint tortfeasors". *See,* Prosser, Law of Torts, § 52, p. 313 (4th Ed. 1971).

Having defined the defendants as a class of joint tortfeasors, it is necessary to consider the attendant legal theories under Missouri Law. Section 537.060 R.S.Mo. (1969) provides that an injured party may effect a settlement with one joint tortfeasor and proceed against other joint tortfeasors for the balance of his damages. Defendant GM argues that plaintiffs have not preserved their cause of action against this defendant as authorized by this statute in that these plaintiffs effected a general release in full satisfaction of their injuries.

■ It is well settled in Missouri that an injured person's right to recover for his injuries whether caused by one or more tortfeasors is basically single. If he receives satisfaction for the injuries from one wrongdoer, whether the injury was caused by one or more, each of whom may be severally liable, he is barred from further recovery. *Hanson v. Norton,* 340 Mo. 1012, 103 S.W.2d 1, 6 (1937). Conversely, when an injured party compromises or settles with one of the concurrent or joint tortfeasors for only a portion of the injuries, the injured person retains his claim or cause of action against the other tortfeasors, and recovery may be had for the balance of the damages for the injury. *Vinson v. East Texas Motor Freight Lines,* 280 S.W.2d 124, 133 (Mo.1955).

Missouri law on this subject is clearly and thoroughly summarized and set forth in *Liberty v. J. A. Tobin Construction Co., Inc.,* 512 S.W.2d 886 (Mo.App.1974), wherein the Court stated at pp. 889–890:

In light of this statute and the definitive decisional rules . . . the courts have clearly pointed the way whereby an injured or damaged party may reach a partial satisfaction with one joint tortfeasor without destruction of his right to pursue other joint tortfeasors. This result may be accomplished only by *specific and clear limitation of the intended scope of the settlement* where such consideration is described as *partial, rights reserved as to remaining tortfeasors, or other appropriate language* . . . In modern practice, such documents are sometimes termed 'Covenants Not to Sue.'

Such reservation or limitation must be expressed *clearly* and *unmistakably* since the law favors fair settlements, compromises and disposal or 'repose' of litigation. In determining whether a release is general and disposes of the whole matter, on the one hand, or limited, on the other hand, it seems that the deciding factor of interpretation is *what* is released not *who* is released by the document. The fact that only one tortfeasor is named in the

release is not conclusive as to its character. Each tortfeasor is liable for the whole damage. *Abbott v. City of Senath,* 243 S.W. 641; *New Amsterdam Casualty Co. v. O'Brien,* 330 S.W.2d 859 [Mo.1960]; *Kestner v. Jakobe,* 412 S.W.2d 205, 208 (Mo.App.1967). *If, therefore, the release by its terms disposes of the whole subject matter, or the cause of action involved, the matter is ended or 'dead' even though only one tortfeasor is specifically named in the instrument of settlement.* (emphasis added)

A more recent Missouri Court of Appeals decision further reinforces this doctrine as interpreted by Missouri courts. In *Rogers v. Piper,* 543 S.W.2d 261 (Mo.App.1976) the Court was presented with the issue of whether a plaintiff, injured by a negligent driver in an automobile collision, having executed a release with that tortfeasor, could proceed against the attending physician and hospital for malpractice in their treatment of the injuries. The Court examined the release and found therein the language "that the above mentioned consideration is accepted in full compromise, settlement, accord and satisfaction of all the aforesaid claims and demands . . ." The Court, in reliance upon the holding in *Liberty,* supra, held that the deciding factor is *what* is released, not *who* is released. Accordingly, it found:

. . . when [plaintiff] acknowledged that he received the consideration recited in full compromise, settlement, accord and satisfaction of all such claims, then it must be held that [plaintiff] had received full satisfaction for all injuries received in the accident, including such as were alleged to have resulted from the negligent treatment rendered by the physicians and hospital. *Rogers v. Piper,* 543 S.W.2d at 264.

Turning to the releases in the instant case, one is entitled "RELEASE IN FULL AND AGREEMENT TO HOLD HARMLESS AND DEFEND," is signed by Anna E. Swope, individually and as Next Friend of Enola Mae Swope, a minor, and is dated July 12, 1976. The mother also signed a release in her individual capacity dated July 12, 1976. Enola's release can be divided into five distinct sections, although not enumerated as such: the release clause and acknowledgement or receipt, the agreement not to prosecute the named parties in the future, the declaration of purpose clause, the clause agreeing to hold the named parties harmless and to defend, and the merger clause.

First, the release clause states that the undersigned releases and discharges forever the driver of the bus, her employer, and their insurers:

. . . from any and *all claims, demands, damages, actions, causes of action* or suits of any kind or nature whatsoever, which the undersigned and/or the aforesaid minor might have or claim to have on account of injuries known or unknown, which have resulted, or may in the future develop, from a school bus accident which occurred at or near Excelsior Springs, Missouri, on or about the 16th day of February, 1973, as is set forth with greater particularity in Cause No. 44206, pending in the Circuit Court of Clay County, Missouri, at Liberty, Missouri. (emphasis added)

From this language it could be said that the plaintiffs were restricting the release to the named parties only. If the "who" requirement were decisive, a strong argument could be made that this release is partial and restricted only to the named parties. However, the Court notes that under Missouri law, reservations or limitations must be clearly and unmistakably expressed. The clause could have contained a specific reservation of plaintiff's rights to proceed against some generally or specifically described entity or entities. *See, Black v. Sanders,* 414 S.W.2d 241 (Mo.1967); *Birmingham v. Kansas City Public Service Co.,* 235 S.W.2d 322 (Mo.1950).

Secondly, the declaration of purpose clause is determinative. This clause describes "what" is being compromised and settled. It states that the terms of the agreement:

. . . are fully understood and voluntarily entered into for the purpose of making a *full and final compromise, adjustment and settlement of any and all claims,* disputed or otherwise, which the undersigned, both individually and as the duly appointed Next Friend and Guardian, respectively, of said minor *has or might in the future have on account of the injuries above mentioned, and* for the express purpose of precluding forever any further or additional claims by or on behalf of Anna Elizabeth Swope and/or Enola Mae Swope against the above described parties, persons, and entities, including specifically any other insured of Fireman's Fund American Insurance Companies, arising out of the aforesaid school bus accident. (emphasis added) Plainly, the release was entered into for two purposes: first, to make a full and final compromise and settlement of all claims the plaintiffs have "on account of the injuries" described and, secondly, to expressly preclude forever any further actions against the named parties.

In the *Liberty* case, supra, the disputed release contained very similar language. Therein, the Court stated that the phrases "all claims" and "all injuries" together with the words "compromise and settlement" clearly indicated that, as a matter of law, the release was general in nature. "No reservation of rights or specific words are contained which would indicate any limited character to be attributed to this release." 512 S.W.2d at 891. Under Missouri law, the release need not expressly utilize the term "satisfaction" for the Court to find it to be a general release. *New Amsterdam Casualty Co. v. O'Brien,* 330 S.W.2d 859 (Mo.1960). In the Swope release before this Court, the same defects are present. Furthermore, a comparison of the allegations contained in the state petition as to plaintiffs' injuries with those in this action discloses an exact identity. This, too, was a factor in the *Liberty* decision. 512 S.W.2d at 891. This Court notes that the release again failed to specify that only a portion of plaintiffs' damages and injuries was compromised and settled as required by Missouri law. *New Amsterdam Casualty Company v. O'Brien,* supra.

The plaintiffs argue further that it was not the intention of the parties to the original document to effect a general release. In support of this claim, the plaintiffs point to the transcript of the hearing before the Honorable Glennon E. McFarland, Judge of the Seventh Judicial Circuit, Clay County, Missouri, wherein the settlement was approved as per the statutory requirements of Missouri when a minor's interests are involved. It is true that several times throughout the hearing references were made to possible future suits against the manufacturers of the bus. (plaintiffs' Exhibit No. 2, pages 14, 15, 19, 30, 35) However, the same transcript also demonstrates that the attorneys for the plaintiffs may have considered the $270,000 settlement as complete satisfaction of all injuries by stating in their examination of each other:

Mr. Von Erdmannsdorff: In your final evaluation and recommendation to the court are you giving any value to the possible ongoing claim or just simply holding that option open feeling that the girl has made a good and fair recovery for her injuries if the court approves this case?

Mr. Kuhlman: Well, I think that this is a fair settlement in this case. We certainly don't want to preclude the possibility of going forward but that has to be somewhat speculative in the, from the research that I have done concerning design defect or a defect in, in manufacturing of the bus.

Q. So in essence, we're not in a position then of having to ask this court to evaluate that potential claim as we present this proposed settlement today?

A. No, I don't want to put the court in that position.

From that dialogue it is apparent that even though a future cause of action was possible against the manufacturers, they were asking the court to accept the $270,000 settlement as "a fair settlement" and that the girl by accepting the consideration had

made a "good and fair recovery for her injuries". Clearly this is indicative that the consideration received was in satisfaction of her injuries.

 Much of the testimony before this Court at the hearing on defendants' motions dealt with the motives and intentions of the parties to the original release. Again, Missouri law is determinative as to the question of intent. In the *Rogers* decision, supra, the court stated:

Rogers impliedly concedes that the law is against him as it presently exists in Missouri, but urges this court should adopt the modern rule which would look to the intention of the parties to determine i[f] an intent actually existed to release the physicians at the time the original tortfeasor was released. There does seem to be some change in the law in this situation, as noted in 39 A.L.R.3d 260. However, the view adopted herein is the firmly established law in this State which this court is bound to follow. 543 S.W.2d at 264.

So too, this Court in a diversity action is bound to follow the law of Missouri. Assuming that the record of the hearing before the state Court does indicate an intent to reserve plaintiffs' rights to proceed against the remaining joint tortfeasors, under Missouri law dismissal of this action is still appropriate. In *Lugena v. Hanna*, 420 S.W.2d 335, 339 (Mo.1967), the Missouri Supreme Court in addressing itself to the question of intent of the parties to a release of the tortfeasor, posited the question: "How could it be said that there was an intention on the part of the parties to reserve the right of plaintiff to prosecute his claim against [defendant] *when no written reservation of such right was included in the release?*" [emphasis added] The Court further applied the parol evidence rule by holding:

The legal effect of a written instrument, even though not apparent from the terms of the instrument itself, but left to be implied by law, can no more be contradicted, defeated, modified, varied, explained, or controlled by parol or extrinsic evidence than if such effect had been expressed. We find no genuine issue of fact which would make the summary judgment procedure inapplicable. 420 S.W.2d at 340.

The merger clause in the Swope release further strengthens this rule. In the *Lugena* decision, the controversy centered between the original parties to the release. Here, the controversy is between the releasors and non-participating defendants. However, when read in conjunction with the *Rogers* decision, it is evident from this decision that in Missouri to fully obtain the benefits of § 537.060 an express reservation must be made in the release. If an express reservation is not found in the release, then the instrument itself must show *on its face* that it is limited in nature and is executed solely to release the named defendant and that it is not entered into for the purpose of obtaining full satisfaction for the incurred injuries. Plaintiffs argue that the holding in *Knoles v. Southwestern Bell Telephone Co.*, 218 Mo.App. 235, 265 S.W. 1005 (1924) is controlling here. Therein, the Court found that a release entered into with one joint tort feasor was not general in nature. It stated that the release involved:

shows on its face that plaintiff was claiming and demanding $15,000 damages . . . [and] plaintiff agreed, in compromise of that claim, to accept the sum of $2,000 not, as stated in the Abbott release, in full of all demands arising from his injuries, but 'in full of all claims of every kind and character against the said defendant'. 265 S.W. at 1007.

Thus the *Knoles* decision, despite its antiquity, is reflective of the present law in Missouri as to releases: if the release clause in the instrument mentions *only* that the consideration is received "in full of all claims against the defendant" then it may be a partial release. However, if the consideration is received in full of all "claims, demands, damages, actions, causes of action" and accepted for the purpose of making "full and final compromise, adjustment and settlement" for injuries "known or unknown, which have resulted, or may in the future develop", then it is indicative that it

is a general release unless there is a "specific and clear limitation of the intended scope of the settlement where such consideration is described as partial, rights reserved as to remaining tortfeasors, or other appropriate language." *Liberty v. Tobin,* supra, 512 S.W.2d 889–890.

Finally, plaintiffs argue that the judgment of the Missouri Circuit Court approving the settlement and release of 1976 is now modified to read that the release was "limited". After defendants had raised their motions, plaintiffs presented affidavits to the state court asserting their intentions in 1976 were to effect only a limited release, and moved that Court for an amended judgment. On January 12, 1978, the state court amended its judgment of 1976 pursuant to Rules 74.30 and 74.31 of the Missouri Rules of Civil Procedure.

These rules provide that imperfections or defects in a judgment will not cause that judgment to be reversed, impaired, or in any way affected. These "imperfections, defects, and variances" may be amended by the court rendering the judgment. The judgment entry of July 12, 1976, reads in part as follows:

> \* \* \* \* The Court now being fully advised finds that the proposed settlement of Two Hundred Seventy Thousand Dollars ($270,000) in favor of the minor plaintiff is fair and reasonable and should be approved, and that a fee to plaintiffs' attorneys in the amount of Ninety Thousand Dollars ($90,000) is fair and reasonable and should be approved.

> \* \* \* IT IS, THEREFORE, ORDERED AND ADJUDGED that the proposed settlement . . . is approved

> . . .

> \* \* \* Next Friend having acknowledged payment in full thereof in open court, it is ordered that the Next Friend execute a release or satisfaction and discharge of this judgment which is now ordered released and satisfied of record.

The judgment entry of January 12, 1978, expressly amends the 1976 judgment to read as set forth above, but with the following very important addition:

> \* \* \* That plaintiffs' right to pursue claims against persons, corporations, companies or entities other than the named defendants and any other person, corporation, company, or entity insured by Fireman's Fund American Insurance Companies is reserved to plaintiffs and Next Friend is authorized to execute a release reserving these rights.

Pursuant to this amended judgment entry, the plaintiffs and the attorney for the insurer of the bus driver and the school bus company entered into an amended contract. This document dated January 12, 1978, is entitled "LIMITED RELEASE" and expressly mentions the *intent* of the plaintiffs not to release persons, companies or entities which are not described in the release.

 It is clear from a reading of Missouri law that the amended instrument entered into by the plaintiffs and the original tortfeasor's attorney pursuant to the order of January 12, 1978 does not effect the issues in this case. In *Liberty v. J. A. Tobin Construction Co., Inc.,* supra, 512 S.W.2d at 890, 891 the Court was faced with a similar modification of a release which was facing a motion for summary judgment. The Court stated that if any weight is to be given to the proposition that "general releases terminate all causes of action against joint tortfeasors" then the subsequent amendment of a general release to transform it into a limited release has no effect. That is, once a cause of action has been extinguished, it cannot be rekindled by the parties. The effect of the amended judgment entry, however, is not as easily determined.

Whereas the 1976 judgment ordered the Next Friend to execute a "release or satisfaction and discharge of this judgment" the 1978 amended judgment expressly authorizes the Next Friend to enter into a "release reserving these rights". Prefacing his

latest judgment entry, Judge McFarland states that after reviewing the transcript of the 1976 proceedings, and after reading the affidavits presented to him indicating the attorneys' intentions, he made the finding:

> That it was the intention of the plaintiffs, the defendants, and the attorneys for both plaintiffs and defendants and *of this Court* that the release act only to bar further suits by plaintiffs against [the original defendants] and specifically to permit plaintiffs to make any claims that they might have against any other parties for damages they claim to have sustained as a result of said accident. [emphasis added]

 Plaintiffs maintain that the amended judgment of the state Court is binding upon this Court. We disagree. It is true that when the parties and the cause of action litigated are the same in state court as in federal court, the doctrine of res judicata bars federal relitigation. *American Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir. 1972). Similarly, disputed factual or legal issues arising between the *same parties* cannot be relitigated in federal court after a valid state court determination of the same issues. *Vernitron Corp. v. Benjamin*, 440 F.2d 105 (2nd Cir. 1971). However, the issue before this Court is whether the settlement contract of 1976 was effective under Missouri law. If the releases are effective, then the amended judgment entry and the amended contract have no effect upon the extinguished cause of action.

Section 507.186 R.S.Mo. (1969) provides that a minor's next friend or guardian ad litem has the authority to submit a proposed settlement to the Court for approval. Subsection (2) provides that the next friend has the power and authority to contract on behalf of the minor for a settlement of the minor's claim, provided that said contract and settlement "shall not be effective until approved by the court". Plaintiffs do not argue that the court did not approve the releases entered into by the plaintiffs, but

that is the logical implication of the 1978 amended entry's statement by Judge McFarland that he did not approve the 1976 release.

 It is outside the province of a federal court to assume the role of an appellate court for the purposes of reviewing the decisions of state courts. However, in determining whether an amended judgment explaining and modifying a judgment rendered eighteen months prior to amendment should be afforded the dignity of judicial comity, this Court should examine initially if the judgment is a final judgment on the merits rendered by a court of competent subject matter jurisdiction and having jurisdiction over the parties. See citations, footnote 4, *Daniels v. Thomas*, 225 F.2d 795 (10th Cir. 1955).

 The plaintiffs had petitioned the Court for approval of the release and the application contained the essential terms and language of the release. The 1976 judgment states that the settlement is approved and directs the guardian to execute the release. The 1976 release then recites "terms of this settlement contract have been explained and presented to the said Court by the undersigned" and that it was executed pursuant to the order of the Court. The Court had jurisdiction over the subject matter and the parties and issued a judgment. The Court lost jurisdiction over the judgment thirty days after rendering as per Rule 75.01, Missouri Rules of Civil Procedure. It does not lose jurisdiction over its record, however, under Rules 74.30 and 74.-31. Plaintiffs argue that the Circuit Court amended its judgment nunc pro tunc, yet the order of the court states that the plaintiffs moved the court to correct the judgment record pursuant to Rules 74.30 and 74.31. These rules permit a court to amend those omissions, imperfections, and defects in judgment records which are set forth in the rule: such as, imperfect return of process, mistake in the names of any parties, incorrect dates recited, etc. Clearly and unmistakably these rules do not provide for amendment of a judgment to include a reci-

tation of the judge's prior intentions and to modify the form of the judgment to conform to the newly stated intention. Assuming that the judgment was amended, not under Rule 74.30 ·as the Court states, but rather under the inherent power of courts to amend judgments nunc pro tunc, under well settled and established case law, a nunc pro tunc order cannot be employed to "change a judgment rendered to reflect the true intention of the court, nor to create a different judgment than that actually rendered." *Wiseman v. Lehman,* 464 S.W.2d 539, 542 (Mo.App.1971); *First National Bank of Collinsville v. Goldfarb,* 527 S.W.2d 427 (Mo.App.1975); *City of Ferguson v. Nelson,* 438 S.W.2d 249 (Mo.1969).

■ This limited inquiry into the jurisdiction of the Court to modify and amend its judgment of 1976 is necessitated by the dictates of the Missouri Supreme Court which has declared that an attempt by a Missouri court to change, amend or modify a judgment that has become final under the statutory provisions of civil procedure is of no effect and the resulting judgment from the attempt is *void,* not merely defective. *Berry v. Chitwood,* 362 S.W.2d 515 (Mo. 1962).

■ Therefore, without jurisdiction over the subject matter, the amended judgment in which the trial court expresses its intentions to this Court can be considered advisory only and not controlling upon the issues before this Court. Accordingly, for the reasons stated herein, the motions of the defendants are hereby granted, for as a matter of law the releases of 1976 were general in nature and in complete satisfaction of all injuries. As such, they operate as a bar to the present action.

IT IS SO ORDERED.