John F. "Jack" WALSH,
et al., Appellants,

v.

FORD MOTOR COMPANY,
Appellee–Movant.

No. 90–7081.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1991.

Decided Oct. 8, 1991.

Rehearing En Banc Denied
Dec. 9, 1991.

Richard C. Warmer, with whom, William T. Coleman, Jr., Carl R. Schenker, Jr., John H. Beisner and James M. MacNee, III were on the brief, for appellee-movant.

Beverly C. Moore, Jr., with whom Norman B. Smith was on the brief, for appellants.

Before RUTH B. GINSBURG, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case is before us for a second time. Following proceedings on remand from our decision in *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C.Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987), the district court denied class action certification and thereupon dismissed the complaint, which sought relief for owners of Ford vehicles with allegedly defective transmissions.[1] The timely-filed notice of appeal designated as the appealing parties: "John F. 'Jack' Walsh, *et al.*" Ford moved to dismiss pursuant to Federal Rule of Appellate Procedure 3(c), for want of a proper appellant. In support, Ford relied on an agreement settling Walsh's personal injury claim pending at the time of settlement in a federal district court in Missouri.

---

1. *Walsh v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C.1990). Absent certification, the district court ruled, the action could not proceed, because the $50,000 amount-in-controversy requirement, *see* 15 U.S.C. § 2310(d), was not met. *See infra* note 2. The individual claims did not exceed the jurisdictional amount; nor could they be joined under Federal Rule of Civil Procedure 20 and thereby be aggregated, the district court held, because they did not arise out of the same transaction or occurrence or series of transactions or occurrences. *Walsh v. Ford Motor Co.*, 130 F.R.D. 514 (D.D.C.1990).

In the settlement agreement, Walsh released "any and all ... claims ... whatsoever ... against Ford."

We conclude that Walsh's release, which contained no reservation, disqualifies him from appealing the denial of class certification and attendant dismissal. Because no other party was specified in the notice of appeal, we further conclude that no appellant has properly invoked this court's jurisdiction. Accordingly, we grant Ford's motion and dismiss the appeal.

## I. Background

In 1981, 104 plaintiffs, including John F. "Jack" Walsh, brought suit in the United States District Court for the District of Columbia alleging, "on behalf of themselves and all others similarly situated," that faulty transmissions in certain Ford models caused the vehicles to shift gear unexpectedly from "park" to "reverse." Asserting that the defect constituted a breach of Ford's written and implied warranty obligations and had caused several accidents and resulting personal injuries, the plaintiffs sought declaratory, injunctive, and monetary relief. As a first step, the plaintiffs sought certification as a "consumer class" under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (1988).[2]

■ In 1985, the district court conditionally certified three plaintiff classes, declaring that it was applying permissively the requirements of Federal Rule of Civil Procedure 23 in order to effectuate fully the remedial purposes of the Magnuson–Moss Act. *Walsh v. Ford Motor Co.,* 106 F.R.D. 378, 386–88 (D.D.C.1985). Later in 1985, the district court granted Ford's motion to

sever 26 claims for personal injuries—including that of plaintiff Walsh—and transferred them to the United States District Court for the Western District of Missouri. On Ford's appeal from the class action ruling,[3] this court vacated the certification order, observing that "Rule 23 applies in Magnuson–Moss cases as it does in federal litigation generally, *i.e.,* sensibly but without special dispensations," and remanded the case to the district court. *Walsh v. Ford Motor Co.,* 807 F.2d at 1019.

On November 10, 1987, as the district court continued to grapple with the question of class certification, Walsh—whose name had appeared since 1984 in the caption of the suit in the district court—negotiated an agreement with Ford, the significance of which is pivotal to the motion before us. Labeled a "Settlement Agreement and General Release" and captioned "In the United States District Court for the Western District of Missouri," the document records that in consideration of $25,000, Walsh agreed to "release Ford ... from any and all actions or causes of action, suits, claims, counterclaims ... and demands whatsoever which said Walsh has now or has ever had against Ford ..., including but not limited to, any any and all claims for damages as alleged in the [personal injury pleadings]...." The agreement also included an undertaking by Walsh to indemnify Ford for all expenses "which may be incurred in the future as a result of any ... claims ... concerning the accident which was the basis of th[e] [personal injury] litigation." Missouri law, the document further stipulated, would govern interpretation of the agreement.

Eventually, after considering the plaintiffs' full array of legal theories and pro-

---

**2.** The Magnuson–Moss Act permits federal courts to entertain certain class action claims that would otherwise lack the "amount in controversy" necessary to establish diversity of citizenship jurisdiction. *Compare* 15 U.S.C. § 2310(d)(3) (establishing jurisdiction when claims aggregate to $50,000 and 100 named plaintiffs have individual claims of $25 or more) *with Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (holding that FED. R.CIV.P. 23 does not allow aggregation of individual claims to establish amount in controver-

sy in class action brought under 28 U.S.C. § 1332).

**3.** A district court's order certifying a class is interlocutory and therefore not immediately appealable as a matter of right. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Permission to appeal immediately, however, may be granted pursuant to 28 U.S.C. § 1292(b), and such permission was granted in this case. *See Walsh v. Ford Motor Co.,* 807 F.2d at 1002 & n. 2.

posed classes, the district court denied the plaintiffs' renewed motion for class certification. *Walsh v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C.1990). Calling the proposed litigation a "trial court's nightmare," *id.* at 277, the district court decided that common legal and factual questions did not predominate among the plaintiffs' claims and that the contemplated nationwide class action was by no means superior to other methods of adjudicating the plaintiffs' claims. To the contrary, the district court observed, the proposed litigation would be plagued by "inevitable and insurmountable" difficulties and might well result in "confusion and ... injustice." *Id.* Without a certified class, the district court concluded, the action could not proceed in federal court because the requisite amount in controversy was absent. *See supra* notes 1 and 2.

On May 17, 1990, well within the 30–day period established by Federal Rule of Appellate Procedure 4(a), a notice of appeal was filed stating: "Notice is hereby given that plaintiffs John F. 'Jack' Walsh, *et al.* appeal" from the district court's denial of class certification and its other orders. Opposite the case name, the notice bore the words "class action" in capital letters. However, the "Certificate of Counsel as to Parties, Rulings, and Related Cases," submitted by the would-be appellants pursuant to Rule 11(a) of the General Rules of this Circuit, sent a different message. Although the certificate listed all the district court plaintiffs as "parties," 61 names were printed in italics, followed by this disclaimer: "The plaintiffs whose names are italicized do not join this appeal because their claims have previously been either settled or dismissed." Plaintiff Walsh's name appeared in italics.

On July 31, 1990, Ford moved to dismiss the appeal, contending *inter alia* that the Rule 11 certificate indicated by its own terms that Walsh did not appeal.[4] In response, Walsh's counsel sought leave to submit an amended certificate purporting to clarify the meaning of the italics: the

plaintiffs in question, the proffered amendment explained, "do not join in this appeal *as to their individual claims*, which have previously either been settled or dismissed on other grounds, *but they do join as to the class claims*." A special panel of this court summarily denied Walsh leave to amend and referred Ford's motion for briefing and argument to this panel.

## II

This court has the authority to entertain appeals only when timely-filed by proper parties. *See* FED.R.APP.P. 4, 26(b) (court "may not enlarge the time for filing a notice of appeal"); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (court may not suspend requirement of FED.R.APP.P. 3(c) that notice "shall specify the party or parties taking the appeal"). Thus, the onus is on Walsh, the only party who can fairly be said to have been "specified" by the notice of appeal, *see Torres* at 318, 108 S.Ct. at 2409, to demonstrate how his right to appeal the certification denial survived his release of "any and all ... claims ... against Ford."

Walsh strives through complex argument to show that the sweeping language of his 1987 settlement in the Western District of Missouri should not disqualify him from pursuing the appeal. After complementing his elaborate "clarification" of the Rule 11 certificate with a similarly creative reading of the terms of the settlement agreement, Walsh places chief reliance on *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). *Geraghty* held that a party whose "substantive" claim became moot during the course of the litigation nonetheless retained a "personal stake" adequate to allow him to appeal the district court's "procedural" ruling denying class action certification. *See id.* at 402–03, 100 S.Ct. at 1211–12. Walsh next points to the district court's post-transfer retention—

---

4. Ford's motion was filed after dispositive motions in the appeal were due, but the special panel granted Ford leave to do so. *See Walsh v.*

*Ford Motor Co.*, No. 90–7081, 1991 WL 40467 (D.C.Cir. filed Mar. 13, 1991) (per curiam); D.C.Cir.R. 7(i)(1).

with his name in the caption—of jurisdiction over the would-be Magnuson–Moss class action and maintains that while his "individual claims" were transferred to Missouri, his "class" claims lived on here—and were unaffected by the settlement. Indeed, Walsh asserts repeatedly that no other interpretation can be squared with Ford's "failure," both after transfer and after the settlement, to move in the district court to dismiss his complaint.

We find Walsh's argument unconvincing. Whatever the precise contours of the "procedural" right, recognized in *Geraghty*,[5] to appeal a certification denial, surely it, no less than any "substantive" right, may be released as part of a plaintiff's voluntary settlement. *Cf. Shores v. Sklar*, 885 F.2d 760 (11th Cir.1988) (en banc) (holding that a settling plaintiff must specifically reserve the right to appeal certification denial). Nor can Walsh tenably assert that a party may not, by a single agreement entered into in a single jurisdiction, release all claims he has or might have against a defendant in multiple jurisdictions. Thus, although we do not question Walsh's contention that his alleged claims as class representative remained in the district court after transfer of his personal injury claim to Missouri, it hardly follows that those claims, or at least their "procedural" class certification component, survived the settlement.

For this court to hear an appeal by Walsh, we would have to find that his 1987 settlement with Ford was, as Walsh now maintains, limited in scope. *See Swope v. General Motors*, 445 F.Supp. 1222, 1228 (W.D.Mo.1978) (under Missouri law, "[i]f an express reservation is not found in the release, then the instrument itself must show *on its face* that it is limited in nature...."). But nothing in that document would give a reasonable observer even a hint of the construction Walsh now advances. With the assistance of counsel,[6] Walsh negotiated a settlement releasing "any and all ... claims ... whatsoever ... against Ford ... including but not limited to" the claim for personal injury damages. The document is devoid of any mention of the rights Walsh now claims to have retained and of any allusion to the distinctions—between "individual" and "class" claims and between the suits in Missouri and the District of Columbia—which Walsh now contends undergird his settlement and release.[7]

Consonant with the unqualified terms of the agreement, when the time came to apprise this court of the settlement, rather than advance the unusual construction he now advocates, Walsh certified in straightforward fashion that he "do[es] not join in this appeal because ... [his] claims have previously been ... settled."[8] Further-

---

**5.** *Geraghty* explicitly reserved the question whether a party who settled voluntarily would have Article III standing to appeal a class certification denial. *See Geraghty*, 445 U.S. at 404 n. 10, 100 S.Ct. at 1212 n. 10. Because Walsh, by the terms of the settlement agreement he signed, relinquished whatever right to appeal he might have had, we need not rule on the qualification, to serve as named appellant, of a settling party who attempted to retain a right to appeal denial of class certification. *Cf. Love v. Turlington*, 733 F.2d 1562 (11th Cir.1984) (holding that settling plaintiff who reserved right to appeal certification denial has standing to do so).

**6.** Indeed, Messrs. Price and McDonald, counsel of record for Walsh in the "Missouri" settlement, were co-counsel for the proposed classes in the district court here.

**7.** At oral argument, Walsh sought to invest with significance the reference in the settlement to "*said* Walsh," calling it a clear signal that Walsh's "individual" claims—but not his *Ger-*

*aghty* "class" claims—were being released. We discern no such signal, for the "procedural" claim to represent a class, which *Geraghty* held to supply a "personal stake," presumably would belong to "said Walsh" in exactly the same manner as would his claim for personal injury damages.

**8.** Walsh repeats here the argument which did not persuade the special panel: that amendment of the Rule 11 certificate should be permitted. Even the most generous "clarification" of the certificate, however, could not alter the broad terms of Walsh's settlement with Ford. Since we rule here that Walsh cannot qualify as an appellant, the closer question of how we would interpret a similar Rule 11 certificate from a proper appellant need not detain us. *Cf. Appeal of District of Columbia Nurses' Ass'n v. District of Columbia*, 854 F.2d 1448, 1449 (D.C.Cir.1988) (per curiam), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989) (considering certificate as evidence of whether, "in the mind of ... counsel," a party had taken an appeal).

more, Ford's acquiescence in Walsh's post-settlement presence in the district court here, far from the "smoking gun" that Walsh makes it out to be, is more plausibly understood as a strategic decision on Ford's part, a refusal to devote resources to an effort that offered no prospect of litigation advantage.[9] We find it evident, in sum, that the settlement agreement relinquished "any and all" of Walsh's claims against Ford—including the claim to represent the class. Accordingly, we rule that Walsh cannot appeal.

### III

Without Walsh as an appellant, we hold that no party was adequately "specified" by the notice of appeal stating that "plaintiffs ... Walsh, *et al.* appeal." *See* FED. R.APP.P. 3(c) ("The notice of appeal shall specify the party or parties taking the appeal...."); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (holding that failure to comply with the specificity requirement of Rule 3(c)—even for "good cause" and without prejudice to the appellee—precludes a court from hearing that party's appeal). This court therefore lacks the authority to review the certification denial. Although we recognize that several circuits have endorsed a pragmatic application of *Torres* to class actions and have taken jurisdiction over appeals noticed only by the class representative, *"et al.,"* see, e.g., *Rendon v. A T & T Technologies*, 883 F.2d 388, 398 n. 8 (5th Cir.1989), no court has yet suggested that *"et al."* would suffice when *no* named party had properly appealed.[10] *Cf. Appeal*

*of District of Columbia Nurses' Ass'n v. District of Columbia*, 854 F.2d 1448, 1450 (D.C.Cir.1988) (per curiam), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989) (indicating, in dictum, that a notice of appeal designating improper appellant, *"et al."* would be inadequate under *Torres*). Delineation for this circuit of what Rule 3(c) requires in class actions and in appeals from certification denials in putative class actions, we think, should await the advent of litigation in which the named party appears qualified to pursue the appeal.

### CONCLUSION

We hold that Walsh's unqualified release of "any and all ... claims" against Ford comprehended his right to appeal the district court's denial of class certification. Walsh is therefore disqualified from pursuing the appeal, and, as Walsh's counsel concedes, the notice of appeal here fails to "specify" any other "party or parties taking the appeal." Without a proper appellant, this court lacks the authority to review the certification denial and consequent dismissal of the complaint. Therefore, Ford's motion is granted, and this appeal is

*Dismissed.*

---

9. Although it may be in a Magnuson–Moss defendant's interest to have enough claims dismissed to drive the number of named plaintiffs below 100 (and then move for dismissal for lack of subject-matter jurisdiction), Walsh was unable to identify at oral argument any time when dismissing the claims of Walsh and the other settling plaintiffs would have reduced the number of named plaintiffs below the jurisdictional minimum. Even in the period—between the 1985 transfer and the 1987 settlement—when the number of named plaintiffs arguably dipped as low as 94, Ford might reasonably have expected that the district court would permit class counsel, as it did on several occasions, simply to add more plaintiffs.

10. Indeed, Walsh's counsel, in response to the court's inquiry, conceded as much at oral argument. We set out here the relevant exchange.

    Court: If we read the release to disqualify Mr. Walsh as an appellant then do you lose this motion?

    Counsel for Walsh: I suppose so.

    Walsh's far less novel assertion that a single plaintiff—with or without *"et al."*—may appeal a certification denial is of no avail to him in the instant controversy.