JOHN SPELMAN, Respondent, v. FREDERICK A. DELANO, WILLIAM K. BIXBY and EDWARD B. PRYOR, Receivers of the Wabash Railroad Company, Appellants.

**Kansas City Court of Appeals, February 1, 1915.**

1. **DAMAGES: Railroads: Delayed Shipment of Cattle.** The plaintiff sued to recover damages from the defendant for a delayed shipment of cattle. The plaintiff requested the defendant's agent to bill the shipment to Chicago via East St. Louis, Illinois, so that he might sell them at the latter place, if he so desired, but the agent issued a through bill of lading to Chicago and the cattle were not delivered at the stockyards in East St. Louis, but were sent to defendant's yards in that city, where they were finally located by plaintiff, but too late for that day's market. The plaintiff signed the shipping contract without reading it, nor did he read the duplicate which was afterwards, while enroute, handed to him. No cause of action for reformation of the contract was alleged in the petition. *Held*, that under the circumstances disclosed by the evidence plaintiff is entitled neither to a reformation of the contract, nor to a recovery on the ground that the negligence of the agent in drawing the contract was the proximate cause of his loss.

2. **PLEADING: Reformation of Contract.** It is proper pleading to ask in reply to an answer, setting up a contract, that it be reformed.

3. **CONTRACTS: Fraud.** Where no fraud is practiced on a party who signs a contract, he is conclusively presumed to know its contents and to accept the terms thereof, and the fact that he did not read it does not alter the rule.

4. ———: **Mistake.** The mutuality of an alleged mistake is an essential ingredient of a cause of action for the reformation of a contract on that ground and the party who seeks equitable relief must show that he was without negligence in the matter.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED.

*N. S. Brown* and *McBaine & Clark* for appellants.

(1) A contract entered into by a mutual mistake of fact should be reformed in equity before it is enforced at law. Miller v. Railroad, 162 Mo. 424; Moran Bolt and Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715; Turner v. Railroad, 114 Mo. App. 539; Meak v. Hurst, 223 Mo. 688, 696. (2) Respondent was bound by the terms of the written contract introduced in evidence. Johnson v. Life Ins. Co., 93 Mo. App. 580, 590; Phelps, Jr. v. Jones, 141 Mo. App. 223, 226; Zeller v. Ranson, 140 Mo. App. 220, 230; Insurance Co. v. Lead Co., 169 Mo. App. 550; Kellerman v. Railroad, 136 Mo. 177, 188; Railroad v. Cleary, 77 Mo. 634; Helm v. Railroad, 98 Mo. 419; Banks v. Railroad, 153 Mo. App. 469, 475. (3) The court committed error in permitting respondent to prove the custom of shippers at Clark, Missouri, who desired to ship their cattle direct to Chicago to ship the same over the Chicago & Alton Railroad, and that it was the custom of all shippers shipping to Chicago, by way of National Stock Yards to claim the privilege of stopping at National Stock Yards. William Staroske v. Pulitzer Publishing Co., 235 Mo. 67, 75.

*Don C. Carter* for respondent.

JOHNSON, J.—This is an action for damages caused by negligent delay in the transportation of fat cattle to market. There was a judgment for plaintiff and defendant appealed.

The petition alleges, and the evidence of plaintiff shows, that the delay in question resulted from the omission from the written contract of affreightment of a provision agreed upon by plaintiff and defendants' station agent, that the cattle were to be carried to Chicago via East St. Louis, Illinois, in order that plain-

tiff might sell them on the market at that place if he found it favorable, and if he found it unfavorable, might send them on to Chicago without rebilling. It is alleged that the agent at Clark, Missouri, the place of shipment, "carelessly and negligently, inadvertently and through and by virtue of a mistake, failed to let said contract show that plaintiff was to have the privilege of the National Stock Yards, Ill., as he was instructed so to do by the plaintiff and which he, the said station agent, had agreed and promised to do, but that said contract by mistake showed a straight billing through from Clark, Mo., to Chicago, Ill., and did not show and express the true contract entered into by plaintiff and defendants through their agent aforesaid." The petition did not seek the reformation of the contract.

In the answer defendant alleged "that while the cattle mentioned in the petition were being transported to the city of Chicago, by these defendants, plaintiff requested them to deliver said cattle at the National Stock Yards at East St. Louis, and that defendants, in accordance with such request of plaintiff, and as soon as possible, delivered said cattle at said National Stock Yards, which is the sole cause of the delay complained of."

The reply alleged "that the contract or bill of lading for the shipment of the cattle mentioned in plaintiff's petition, does not show or express the true intent, agreement and understanding had between plaintiff and the agent and servant of defendants as to the route of shipment of said cattle, but that by mistake said contract or bill of lading showed that said cattle were to be transported direct to Chicago, Ill., whereas in truth and in fact, it was understood and agreed by and between plaintiff and the agent and servant of defendants that plaintiff was to have the privilege of the National Stock Yards Market at East

St. Louis, Ill., and that said cattle were to be transported via said market," but did not pray for the reformation of the contract.

The cattle were shipped from Clark on a train that carried St. Louis but not Chicago shipments. Plaintiff, accompanied by another shipper, went to the window behind which defendants' agent was standing busily engaged in preparing shipments for that train. The agent asked plaintiff how he wanted the cattle billed and plaintiff turned to his companion and inquired how he would bill them. His companion replied that he always had his good cattle billed to Chicago with the privilege of the National Stock Yards (St. Louis). Plaintiff then told the agent to bill them that way. After filling out the contract, the agent pushed it towards plaintiff for his signature and plaintiff signed and returned it without looking at it to see if his direction had been followed. The contract, as drawn, showed a through shipment to Chicago and contained no reference to transportation via St. Louis. Plaintiff went to St. Louis with the cattle and when the train was near Centralia, the conductor handed him the contract and he put it in his pocket without looking at it and had it in his possession thereafter.

The train arrived at St. Louis on time and the cattle would have been placed on the market that day if plaintiff's directions had been noted in the contract and billing. Instead of being taken to the Stock Yards they were sent to defendants' yards from which trains for Chicago were sent out. They were found there, on an investigation started by plaintiff, and were sent over to the Stock Yards at his request but too late for that day's market.

There was no judgment rendered reforming the contract on the ground that the omission from its terms of the agreement for a shipment via St. Louis was the result of a mutual mistake, and no such judgment

could properly have been rendered, since the pleadings filed by plaintiff did not tender a cause of action in equity for reformation. The petition alleged that the omission was the result of a negligent mistake of defendants' agent, and when informed by the answer that the defense was a reliance upon the strict terms of the written contract, which provided for a through shipment to Chicago, plaintiff sought to tender in his reply the issue that the contract, by mutual mistake, did not express the real agreement the parties intended to make, but he did not invoke the equitable jurisdiction of the court for the correction of such mistake. The only cause tried and submitted was one for damages founded on the theory that plaintiff, without first procuring an adjudication reforming the written contract, was entitled, in his action for damages, to prove the oral agreement without which no cause for negligent delay could be shown and that the omission of that agreement from the written contract was the result of negligence of defendants' agent.

This was an erroneous view of the law, now freely admitted by counsel for plaintiff. Until reformed by judgment, the terms of the written contract must control the rights and liabilities of the parties and those terms cannot be changed or impaired by proof of an antecedent or contemporaneous oral agreement. A cause for the reformation of the contract could have been joined in the same action with a cause for damages created by the negligent delay of defendant in the performance of the real contract, and could have been first pleaded in the reply. "It is proper pleading to ask in reply to defendants' answer, setting up such contract, that it be reformed." [Turner v. Railroad, 114 Mo. App. 539; Courtney v. Blackwell, 150 Mo. 278.]

But where, as here, the equitable cause for reformation is not asserted, either in the petition or re-

ply, the written contract must be given full force and effect, and the plaintiff will not be heard to say that it does not express the real agreement of the parties. Conceding that this is the law and that the present judgment should not be allowed to stand, plaintiff asks that the cause be remanded for another trial in order that by amendment of his pleadings he may be allowed to include a cause for reformation of the contract on the ground of mutual mistake.

In the evidence adduced in support of his allegations that the real agreement provided for a diversion of the shipment to the Stock Yards at East St. Louis, the facts and circumstances of the omission of that agreement from the written contract, and of plaintiff's failure to discover the mistake until it had caused the damages he sued to recover, were as fully disclosed as they could have been had the issue of a reformation of the contract been under formal inquiry. That evidence shows affirmatively and conclusively that plaintiff has no cause of action either for reformation of the contract or for damages, and that his loss was caused by his own negligent fault. In no event, as we shall show, would he be entitled to recover damages, and if this be true, no good purpose could be accomplished by remanding the case.

That plaintiff was guilty of negligence, without which his loss would not have occurred, is a fact indisputably established by his own testimony. He admits signing the contract without reading it, when the merest glance at the insertions made by the agent on the printed form would have disclosed the mistake. He attempts to excuse his remissness on the plea that shippers do not examine such contracts but rely entirely upon the agent for the insertion of special shipping directions. If that is so, it is a custom more honored in the breach than in the observance, and one which the law will not countenance. Our courts, in

common with all others in English speaking countries, have constantly adhered to the rule that a written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties, and that a party under no disability and not under the influence of fraud who admits that he signed a contract without reading it will not be allowed to avoid its terms on the ground that it failed to express the mutual intention of the parties.

As it aptly said by ELLISON, J., in Johnson v. Life Insurance Co., 93 Mo. App. 1. c. 590: "If the contract can be attacked merely on the ground that it does not express what was verbally understood, then it serves no purpose except where the parties agree; and not then, for, when they agree on what the terms of a contract were, it can serve no purpose, since, in that case it is not needed. The law, therefore, may be stated to be, that when, without fraud practiced upon him, a person signs a contract, he is conclusively presumed to know its contents and to accept the terms thereof; and the fact that he did not read it does not alter the rule. [Railroad v. Cleary, 77 Mo. 634; O'Bryan v. Kinney, 74 Mo. 125; Mateer v. Railroad, 105 Mo. 320; Och v. Railroad, 130 Mo. 1. c. 44; Kellerman v. Railroad, 136 Mo. 1. c. 188; Crim v. Crim, 162 Mo. 544.] In the latter case (overruling Wright v. McPike, 70 Mo. 175), Judge MARSHALL said: "The written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties. To permit a party when sued upon a written contract, to admit that he signed it, but to deny that it expressed the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments."

The fault of plaintiff consisted not only of signing the contract with his eyes shut, but also in not availing

himself of the ample opportunity he had for an examination of its terms before his loss occurred, and while he knew that something had occurred to prevent the switching of the cattle to the Stock Yards. He accompanied the shipment to St. Louis, knew the train had arrived on time, had the contract in his pocket, and to procure a ready and prompt correction of the mistake had only to notify defendant that one had been made, and to request that the cattle be switched to the to the Stock Yards. He wasted the market hours of that day in vain hopes and while he did telephone occasionally to defendants' office to inquire about the shipment, he neglected to look at his contract, as he should have done, to see if it did not contain an explanation of the cause of what appeared as an unusual and inexplicable delay in the final movement of the shipment.

Under such circumstances plaintiff is entitled neither to a reformation of the contract nor to a recovery on the ground that negligence of the agent in drawing the contract was the proximate cause of his loss.

The mutuality of an alleged mistake is an essential ingredient of a cause of action for the reformation of a contract on that ground. [Meek v. Hurst, 223 Mo. l. c. 696.] And another most important element of a good cause is that "the party who seeks the equitable relief must show that he was without negligence in the matter." [Miller v. Railway, 162 Mo. l. c. 441.] It matters not what the oral agreement was if the complaining party negligently fail to read the contract he has his own negligence to charge with his loss and has no ground on which to seek a reformation. In Turner v. Railway, supra, the oral agreement, as in this case, was for a shipment of live stock to Chicago with the privilege of the St. Louis Stock Yards. The written contract did not state the privilege in precise

terms but did state that the shipment was to go "via St. Louis." The shipper mistakenly interpreted this as a statement of the privilege in question and we held that he was not negligent in law for acting on such interpretation but had a good cause for a reformation of the shipping contract. In the instant case there is nothing to palliate the inexcusable negligence of plaintiff in failing to observe one of the most fundamental and well known rules of contract law.

The judgment is reversed. All concur.