Kimbra **LUNCEFORD** and Christopher Lunceford, **Appellants,**

v.

Michael C. **HOUGHTLIN, Respondent,**

and

Glynn W. **Graybill, Respondent.**

No. WD 64017.

Missouri Court of Appeals,
Western District.

May 31, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2005.

Application for Transfer Denied
Sept. 20, 2005.

Richard Sullivan, Blue Springs, for appellant.

Kenneth Berra and Dennis Bosch, Independence, for respondent.

RONALD R. HOLLIGER, Judge.

Kimbra and Christopher Lunceford appeal a summary judgment holding that a general release of one tortfeasor in a motorcycle accident also released two other torfeasors. Because there is a genuine dispute of material fact whether the release intended to release other tortfeasors and as to whether the release was capable of reformation on grounds of mistake by the parties to the release, we conclude that it was error to grant summary judgment.

In May 2002 Kimbra and Christopher Lunceford were injured in a motorcycle accident. After settling with Christopher Lunceford's liability insurance carrier, Kimbra and Christopher brought a suit for their individual injuries against Michael Houghtlin and Glen Graybill, two other motorcyclists who allegedly precipitated the accident that injured the Luncefords. Respondents sought summary judgment based upon the defense of release, premised upon a release executed by each of the Luncefords ("individually and as husband and wife") in connection with the earlier settlement that purported to release "all other persons" from all claims arising from the accident.[1] The Luncefords argued that the release was the product of mutual mistake and that the settling parties did not intend to release the liability of anyone other than Christopher and his insurers, presenting a "corrected release" that they claimed correctly stated the intent of the parties to the original release. The trial court granted respondents' motion and entered summary judgment against the Luncefords, who bring the present appeal.

## Factual and Procedural Background

Appellants Kimbra and Christopher Lunceford were riding together on a motorcycle as part of a charity ride being held on May 5, 2002. Christopher was operating the motorcycle, while Kimbra was riding behind him as a passenger. Ahead of them, respondents Michael Houghtlin and Glen Graybill were driving separate motorcycles, riding abreast of each other.

As Houghtlin and Graybill navigated a curve on Highway H in Platte County, Missouri, Houghtlin lost control of his motorcycle. He collided with Graybill, causing his motorcycle to tip over, as well. Christopher Lunceford, in an attempt to evade the accident, steered to the right side of the road and applied his brakes. Unfortunately, the rear tire lost traction with the road, causing the motorcycle to crash into a ditch alongside the road.

1. The record does not explain why Christopher Lunceford was both a releasor and a releasee (as a tortfeasor for his wife's injuries). He would not have a loss of services claim against himself for his wife's injuries. Ordinarily, he would have no claim against his own liability carrier unless under UIM or UMI coverage. This may be the reason he also executed the release in favor of the insurer. The record is not clear and we do not need to further consider this issue but observe that it is an interesting question whether the rules of general release would apply under such circumstances.

Christopher sustained minor injuries in the crash, while Kimbra suffered more severe injuries, including broken bones in her right shoulder and left ankle. The treatment cost for those injuries exceeded $100,000, and she also lost wages as a result of her injury in an amount exceeding $20,000.

Christopher was insured by a policy issued by GuideOne Specialty Mutual Insurance Company, with American Modern Home Insurance acting as reinsurer on that policy. A claim was made [2] under that policy and settled with the insurers for the policy limits of $50,000. As part of that settlement, the Luncefords executed a document entitled "General Release" on December 15, 2002, that included the following language:

Each of the undersigned, CHRISTO-PHER LUNCEFORD AND KIMBA [sic] LUNCEFORD, BOTH INDIVID-UALLY AND AS HUSBAND AND WIFE (ONLY) for the sole consideration of FIFTY THOUSAND DOL-LARS & 00/100 Dollars ($50,000) paid to one or more of them, the receipt of which is acknowledged, does release and forever discharge CHRISTOPHER LUNCEFORD AND AMERICAN MODERN/GUIDEONE INSURANCE, his, her, their or its agents and servants and all other persons, firms, associations, and corporations of and from any all actions, claims and demands including claims or actions for contribution and/or indemnity of whatever nature existing or which may hereafter arise out of an accident, casualty or occurrence which occurrence which happened on or about the 5th day of May, 2002, at or near E[sic] HWY PLATT [sic] COUNTY including any consequences thereof now existing or which may develop, whether or not such consequences are known or anticipated.

The Luncefords subsequently brought suit against Houghtlin and Graybill. During discovery, the release with GuideOne and American Modern was disclosed to defense counsel. Houghtlin and Graybill subsequently filed an amended answer raising the defense of release. They also moved for summary judgment, contending that the December 2002 release operated to bar the Luncefords' claims against them.

The Luncefords, in reply, argued that neither they nor Christopher's insurers intended to release anyone who was not party to the settlement and that the language of the December 2002 release mistakenly and incorrectly memorialized the settling parties' intent. In support of that argument, they presented affidavits by Christopher, a representative of his insurers, and a "corrected release" executed in November 2003 which specifically indicates that it is a limited release and reserves claims against individuals who were not party to the release.

The trial court granted the motion for summary judgment and entered judgment in favor of Houghtlin and Graybill. This appeal follows.

## Discussion

### I. Standard of Review

In reviewing the trial court's grant of summary judgment, we view the facts in the record in the light most favorable to the Luncefords, as the non-moving parties. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376

---

**2.** Again we are unsure whether the claim was made for just Kimbra's injuries. *See supra* n.

1.

(Mo. banc 1993). We also grant them the benefit of all reasonable inferences that may be drawn from the record. *Id.* Our review is de novo, and we do not defer to the trial court's findings or conclusions of law. *See id.*

Before a party may be granted summary judgment, that party must present undisputed facts that entitle that party to judgment as a matter of law. *Id.* at 378. If the non-moving party presents materials which give rise to a genuine dispute of material fact, then summary judgment cannot be granted. *Id.*

Here, Houghtlin and Graybill sought summary judgment based upon the affirmative defense of release. Accordingly, in order to obtain summary judgment, it was necessary for them to present undisputed facts which established that they were entitled to the defense as a matter of law. *Id.* at 381. If any of the facts necessary to that affirmative defense were subject to genuine dispute, however, summary judgment would be inappropriate. *Id.*

## II. Background: The Evolution of Missouri Law Regarding Releases

■ Under the common law, if an injured party settled and entered into a release agreement with one or more multiple joint tortfeasors, any claims against the non-settling tortfeasors were extinguished. *Manar v. Park Lane Med. Ctr.*, 753 S.W.2d 310, 312 (Mo.App.1988). In 1978, the general assembly enacted statutory provisions permitting the injured party to preserve his or her claims against non-settling tortfeasors by expressly reserving claims against them in the release. *Id.*; Section 537.060, RSMo 1978. Thus, the statutory changes placed in issue the question of the settling parties' intent. In determining that intent, it was necessary to look to the language of the release. Where the release was silent, however, the presumption was that, in the absence of such language, a release operated to extinguish the liability of all joint tortfeasors. *See id.*

■ In 1983, Section 537.060 was amended, reflecting language from the 1955 revision of the Uniform Contribution Among Tortfeasors Act (UCATA). *Aherron v. St. John's Mercy Med. Ctr.*, 713 S.W.2d 498, 501 (Mo. banc 1986). The new statutory language provided that executing a release with regard to one tortfeasor would not automatically operate to release claims against other joint tortfeasors, in the absence of any language expressly releasing claims against other persons. See *Manar*, 753 S.W.2d at 312; Section 537.060, RSMo 1984. Thus, the presumption shifted, and release of non-settling joint tortfeasors was no longer presumed unless there was language in the release expressly releasing those claims.

■ To recapitulate, the statutory changes in the past twenty-seven years have determined how the intent of a settling party is to be construed from a release. Prior to the 1983 amendment, the presumption was that the intent was to release all non-settling joint tortfeasors unless claims against those individuals were expressly reserved. As a practical matter, that presumption placed the burden upon the injured party to show that a non-settling tortfeasor was not released from liability when the injured party had previously executed a release. After the 1983 amendment, the presumption became that the intent was not to release claims against non-settling tortfeasors in the absence of language releasing those claims. By extension, the burden was placed on non-settling tortfeasors to show that a release contained language that operated to extinguish claims against them.

Although it might seem that the logical application of the 1983 amendment in the historical context might have been to benefit only those parties expressly identified in a release (or those in privity with those parties), such was not to be the case. Courts continued to consider whether releases contained general (and often boilerplate) language such as "all persons" and "all claims" or whether the release specifically reserved other claims. *See, e.g., Rudisill v. Lewis,* 796 S.W.2d 124, 126 (Mo.App.1990). Thus, the net effect of these decisions has been effectively to reimpose the common law rule unless the careful practitioner uses partial release language or specifically identifies those not intended to be released. *See id.; Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993).

Determining whether a release operates to release claims against a non-settling tortfeasor requires examination of the language of the release. As stated above, it is now presumed that claims against tortfeasors not expressly mentioned in the release are not extinguished. It is not necessary, however, that a release specifically identify other joint tortfeasors (by name or otherwise) in order to release claims against those other tortfeasors. If a release states that it releases "all claims" against "any and all persons," or similar language, it may operate as a general release, and effectively extinguish claims against all tortfeasors, even those who were not parties to the release. *Ellis v. Reisenbichler,* 712 S.W.2d 468, 469 (Mo. App.1986).

## III. The December 2002 Release Was Unambiguous

In their first point on appeal, the Luncefords take the position that summary judgment should not have been granted because the December 2002 release was ambiguous. The Luncefords first contend that Section 537.060, RSMo, prohibits the unintended release of third parties who are not parties to the release. While this is the case, the statute also clearly states that a release can discharge the liability of third parties if it so provides. Courts have routinely held language which releases claims against "all other persons, firms and corporations" to be unambiguous and enforceable to bar claims against third parties who were not party to the release. *See Slankard v. Thomas,* 912 S.W.2d 619, 624 (Mo.App. 1995). The release, here, contains equivalent language. This argument is without merit.

They next claim that specific language in the release operates to override general language in the release, thereby creating an ambiguity in the release. The specific language the Luncefords claim gives rise to ambiguity is the following passage of the December 2002 release:

Each further acknowledges:

. . . .

(2) That the parties released have denied liability in whole or in part, and that the payment acknowledged in this Release was made without admission of liability and received in discharge, compromise, settlement and satisfaction of all actions, claims, and demands heretofore described.

They also point to language stating that the "Undersigned hereby accepts drafts or drafts as final payment of the consideration set forth above."

The Luncefords take the position that the first passage creates an ambiguity because the only "parties" that had denied liability at the point the November 2002 release was executed were Christopher Lunceford and his insurers. Suit had not yet been filed against Houghtlin and Gray-

bill, hence they had not "denied" liability. Contrary to the Luncefords' claims, however, these passages create no ambiguity or inconsistency that cannot be resolved within the four corners of the document. If anything, they clarify that the language, as written, constitutes a general release of all claims arising out of the accident. A plain language reading of the term "parties," in the above passage would appear to readily extend not only to the parties engaged in the settlement but also all other third parties encompassed by the general release language. We hold that the language cited by the Luncefords does not create an ambiguity requiring resort to parole evidence.

█ The Luncefords further claim that a latent ambiguity was created by the release's reference to "Highway E" in "Platt County" as the location of the accident. Even if those scrivener's errors created an ambiguity, it was only with regard to what incident was being addressed in the release of claims. It would have no bearing on the question of whether the language of the release operated to release all claims against all potential tortfeasors or whether it was a limited release serving to extinguish claims only against the signatories. Thus, this argument also fails to present a basis for reversal.

The trial court did not err in its conclusion that the language of the December 2002 release was unambiguous. The Luncefords' first point on appeal is denied.

## IV. Was the December 2002 Release Subject to Modification or Reformation?

█ Here, the language of the December 2002 release expressly states that the Luncefords release "all other persons, firms, associations, and corporations of and from any all actions, claims and demands." The trial court correctly concluded, based upon extant precedent, that this language was unambiguous and would operate as a general release of all claims against all tortfeasors arising from the accident.

Here, however, the Luncefords have alleged that the language of the December 2002 release was the result of a mistake, and that the parties to the release did not intend to release any claims except those against Christopher Lunceford and his insurers. Affidavits have been presented supporting those allegations. Further, the Luncefords executed a "corrected release" in November 2003, which purports to be a limited release conforming to that original intent. Thus, prior to granting summary judgment, the trial court was required to determine whether the December 2002 release had been modified or whether facts had been presented which supported reformation of that release to conform with the parties' original intent.

With regard to the issue of modification, the trial court found that the corrected release was of no significance. In reaching the determination that the "corrected release" executed by the Luncefords could not operate to modify the release of Houghtlin and Graybill, the court relied primarily upon *Rudisill v. Lewis,* 796 S.W.2d 124 (Mo.App.1990). We conclude that *Rudisill* contains *dicta* that perpetuate an incorrect statement of the law and should not be followed.

In *Rudisill,* the plaintiffs sought recovery from two tortfeasors for damages arising out of an automobile accident. The plaintiffs settled with one defendant, and executed a release that included terms purporting to release " 'all other persons and organizations who are or might be liable, from all claims for all damages' sustained as a result of the accident." *Id.* at 125. Suit was brought against the other tortfeasor, and, sometime prior to trial, the

plaintiffs executed "corrected" releases that expressly reserved ·their claims against the non-settling tortfeasor. *Id.* at 125–26. That defendant moved for summary judgment against the plaintiffs, which the trial court granted. *Id.* at 126.

The *Rudisill* plaintiffs appealed to this court, which affirmed the trial court's grant of summary judgment. *Id.* at 128. While there was a question regarding the effect, if any, of the "corrected" releases executed by the plaintiffs, we held that the issue was not properly preserved, as it had not been asserted in any of the points on appeal. *Id.* at 126. This court, therefore, did not properly have before it the question of whether the "corrected" releases had any legal effect. Nevertheless, the *Rudisill* opinion does address that unpreserved question. That discussion, however, is mere *obiter dicta.*

In that discussion, the *Rudisill* court stated that "the original release executed by the plaintiffs was an effective general release and thus makes subsequent 'releases' nullities." *Id.* at 126. In support of that *dicta,* the opinion relies upon *Liberty v. J.A. Tobin Construction Company,* 512 S.W.2d 886 (Mo.App.1974),[3] and *Swope v. General Motors Corporation,* 445 F.Supp. 1222 (W.D.Mo.1978).

The trial court, without substantial analysis, held that the "Amended Contract of Release" was without legal effect to vary the terms of the original release executed by the plaintiff. *Id.* It rests this conclusion upon an opinion by the Springfield Court of Appeals in *Kestner v. Jakobe,* 446 S.W.2d 188 (Mo.App.1969) (*"Kestner II"*).

As will be discussed below, *Liberty* misconstrues the holding of *Kestner II.*

*Swope* relies solely upon *Liberty* in reaching its conclusion that a release, once executed, could not be amended by the parties to remove language that purported to generally release claims against unidentified third parties. *Swope* goes one step further than *Liberty,* however. That opinion, without citation, posits that once a cause of action has been extinguished, it cannot be rekindled by the parties. *Swope,* 445 F.Supp. at 1229.

This brings us to the opinion in *Kestner II,* which lies at the root of the holdings of *Liberty, Swope,* and *Rudisill.* In the relevant passage of *Kestner II,* the court addressed itself to *dicta* in an opinion written during a previous appeal of the case, *Kestner v. Jakobe,* 412 S.W.2d 205 (Mo.App. 1967) (*"Kestner I"*). The circumstances of the case are somewhat complex. Thus, some exposition of the factual and procedural history underlying it is necessary for clarity.

The matter arose when the Kestners were involved in a vehicular accident and sued both the driver of the vehicle in which they were riding at the time of the accident and the driver of the other vehicle involved in the collision. 412 S.W.2d at 206. The plaintiffs settled with the former defendant, and proceeded to trial against the other defendant. *Id.* A release was executed by the Kestners as part of that settlement, and the release contained language generally releasing not just the settling driver, but also all other persons from all claims arising out of the accident. *Id.* at 207. The non-settling driver sought

---

**3.** The plaintiffs in *Liberty* settled with one of multiple tortfeasors and executed a release that purported to release "all claims" held by the plaintiffs. 512 S.W.2d at 890. There was no express reservation of claims against any of the remaining tortfeasors, as was required at the time in order to preserve such claims. *See id.* at 890. At some later point, the plaintiffs executed an "Amended Contract of Release" that contained an explicit reservation of claims against J.A. Tobin Construction Company. *Id.* at 889.

to assert the release as a bar to the Kestners' personal injury claims. *Id.*

At the original trial, the Kestners argued that the release should be considered invalid because it was procured by fraud. The trial court agreed, refusing the defendant's request to present that issue at trial and submit it to the jury. *Id.* at 208. The resulting judgment was reversed on appeal in *Kestner I*, on the basis that the fraud issue should have been submitted to the jury. *Id.* at 209. In passing, the appellate court noted, however, that the parties had apparently executed a subsequent agreement with the settling driver. That agreement was not in the record, but the court, in *dicta*, indicated that "of course an agreement of compromise can be modified or rescinded by the parties like any other contract." *Id.* (citing *U.S. v. Dake*, 42 F.Supp. 833, 838 (D.N.Y.1941), and 15A C.J.S. Compromise and Settlement Section 29).

After returning to the trial court, the Kestners proceeded under their original theory that the original release was invalid because it was procured by fraud. *See Kestner II*, 446 S.W.2d at 190. Shortly before trial, the plaintiffs sought to amend their petition to also plead that the original release between the parties should be rescinded on grounds of mutual mistake. *Id.* at 196. Leave to amend, however, was denied due to the proximity of trial. *Id.* On appeal, it was held that the trial court did not abuse its discretion in refusing to permit amendment of the pleadings so late in the proceedings. *Id.* It further held that it would have been improper to treat the issue as tried by consent, given that it was not raised at trial. *Id.*

Despite having properly disposed of the issue, the court in *Kestner II* opted to address the *dicta* of *Kestner I* with *dicta* of its own. It stated that "[t]his court did state in its former opinion that an agree-

ment of compromise can be modified or rescinded by the parties like any other contract, but upon further reconsideration we find that statement too broad and ill-considered in context." *Id.* (internal citation omitted).

This passage does not signify a blanket rejection of the principle stated in *Kestner I*, but instead merely exhibits the *Kestner II* court's concern that the principle may have been overstated and may not have been a completely accurate presentation of the law on the issue. Put another way, the *Kestner II dicta* does nothing more than reflect a concern that there may be legal and equitable requirements that may play a role with regard to modification or rescission of a release agreement that may not be present in regards to other agreements and contracts. Further, the language suggests that a more extensive analysis and discussion of the issue than given in either iteration of *Kestner* would be called for to resolve the issue.

*Liberty* and its progeny, however, failed to engage in that analysis and failed to consider that the *Kestner II* statement was itself *dicta* and, even then, only a withdrawal of other *dicta*, not a rejection of the principle that a release *may* be modified. Instead, they misconstrued the language of *Kestner II*, citing it for the blanket proposition that a release agreement can never be modified or rescinded by the parties. Therefore, we conclude that *Liberty* and *Rudisill* do not correctly state the law on this issue and should not be followed.

We now return to the central question presented in this matter: What legal effect, if any, did the execution of the "corrected release" in November 2003 have regarding the December 2002 release and, by extension, the status of the Luncefords' claims against the respondents in this matter? In resolving this question, we must determine whether the November 2003 release constituted a *modification* of the De-

cember 2002 release or whether it instead operates to provide support for *reformation* of the earlier release.

 A release is a species of contract. *Mackley v. Allstate Ins. Co.*, 564 S.W.2d 634, 635 (Mo.App.1978). As such, general principles of contract amendment and reformation provide guidance to the circumstances under which a release may be modified and how a modification could be accomplished. Generally, the parties to a contract are free to subsequently modify their contract, notwithstanding contract language limiting modification. *Twin River Constr. Co. v. Pub. Water Dist. No. 6*, 653 S.W.2d 682, 690 (Mo.App.1983) (citing *Smith v. Githens*, 271 S.W.2d 374, 379 (Mo.App.1954)). Contract modification entails meeting the same elements as required for formation of the original contract. *Id.*

 In contrast, reformation is a remedy by which a party to a contract (including an intended beneficiary) may obtain modification of the terms of the contract such that those terms reflect the parties' original intent in forming the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS Section 155 (1981). In seeking reformation, it must be established that a mistake occurred that caused the contract language to differ from what the parties intended in their agreement. *Id.* While reformation is "an extraordinary equitable

remedy," it is nevertheless available upon a showing that, due to either fraud or mutual mistake, "the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intentions of the parties." *Elton v. Davis*, 123 S.W.3d 205, 212 (Mo.App. 2003).[4]

 Reformation, being a judicial remedy, must be raised at the trial court level, and cannot be considered for the first time on appeal. *Roth v. Phillips Petroleum Co.*, 739 S.W.2d 598, 600 (Mo.App.1987). Generally, this is done in the pleadings. *See id.; Spelman v. Delano*, 187 Mo.App. 119, 172 S.W. 1163, 1164 (1915). One learned commentator takes the position that reformation of a release is only available if it is sought within the pleadings. 15 LEE R. RUSS, COUCH ON INSURANCE 3D Section 216.48 (1999). Here, the respondents contend that the trial court properly disregarded the Luncfords' arguments that the December 2002 release should be reformed because there was no pleading filed by the Luncefords seeking reformation.

 With regard to other forms of contracts, there are clearly situations in which a prior request for reformation was not required before a trial court was able to grant reformation. For example, reformation of a contract is proper if the issue is tried by implied consent, even in the

---

4. We note, in passing, that reformation is a form of equitable relief. *See Smith v. Githens*, 271 S.W.2d at 379. Accordingly, it may not be available in situations where reformation would unfairly affect the rights of third parties. RESTATEMENT (SECOND) OF CONTRACTS, Section 155 cmt. f (1981). This principal applies in the context where the third party is a good faith purchaser for value. *Id.* It may also apply where the third party relies upon a property interest acquired under the original contract language. *Id.* While respondents might contend that this principle applies, here, it is difficult to see how they would be

*unfairly* affected by reformation of the release. They were not party to the prior settlement and neither contributed funds to that settlement nor otherwise compensated the Luncefords for their injuries. There is no showing that respondents relied to their detriment upon the original release. Moreover, the effect of the language of the original release would be to grant respondents a windfall, by absolving them of potential liability for those injuries without any action or contribution on their part. *See Everhart v. Crabb*, 775 S.W.2d 335, 338 (Mo.App.1989).

absence of a pleading requesting reformation. *See Young v. Ray America, Inc.,* 673 S.W.2d 74, 81 (Mo.App.1984). Further, where the parties to a contract, through their words and conduct, demonstrate an intent to reform the contract, a court can deem the contract reformed, even in the absence of pleadings seeking reformation. *See Bullock Co. v. Allen,* 493 S.W.2d 5, 7 (Mo.App.1973).[5]

■ We generally agree that a trial court may refrain from granting equitable relief in the form of reformation in the absence of a pleading requesting that relief. In the typical reformation situation, the issue of reformation arises because there is a dispute between the parties to the contract with regard to performance of the contract. Here, enforcement of the December 2002 release is being sought not by a party to the release, but instead individuals who, at best, may be third party beneficiaries. The reformation issue was clearly identified and litigated by the parties below. The existence of the November 2003 corrected partial release was pled in the Luncefords' reply to the defendants' amended answers. Given those facts as well as the unusual context in which that issue arose, we conclude that the trial court was adequately presented with the issue for purposes of determining whether the respondents were entitled to summary judgment upon their motion.

## V. A Genuine Dispute of Material Fact Barred Entry of Summary Judgment

■ It is a foundational principle that summary judgment cannot be granted unless the undisputed facts entitle the mov-

ing party to judgment as a matter of law. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 380. If the non-moving party establishes a genuine dispute of material fact, summary judgment is inappropriate. *Id.* at 381. Such a dispute is present here.

In considering whether summary judgment was appropriate, we view the facts in the light most favorable to the Luncefords, as the non-moving parties. *Id.* at 376. Through affidavits, the Luncefords have presented facts which suggest that the December 2002 release mistakenly and incorrectly memorialized the settling parties' intent and that the November 2003 "corrected release" is, instead, the correct articulation of their intent. If those facts would subsequently be proven at trial, they would form a valid basis upon which the trial court could deem the December 2002 release reformed in accordance with the November 2003 corrected partial release. If so reformed, the release would leave reserved claims against Houghtlin and Graybill, and they could not prevail upon the affirmative defense of release.

Having found that the Luncefords presented a genuine dispute of material fact, we conclude that the trial court erred in granting summary judgment in favor of the respondents. The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

EDWIN H. SMITH, Chief Judge, and PAUL M. SPINDEN, Judge, concur.

5. *Bullock* relies, in part, upon Restatement of Contracts Section 507 (1932), which provides that reformation is available in the absence of a preliminary decree of reformation and that a court has discretion to deem a contract reformed when the circumstances justify reformation of the contract. This section of the first Restatement is not expressly included in the second Restatement. However, as the principle has been adopted by Missouri courts, we consider it applicable to the case at bar.