

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| TIFFANY TRAWEEK, | ) | |
| Appellant, | ) | WD83291 |
| v. | ) | |
| | ) | |
| TIMOTHY SMITH and DAVIS & BELL | ) | FILED: September 8, 2020 |
| AUCTION SERVICE, L.L.C., | ) | |
| Respondents. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY
### THE HONORABLE MIKE WAGNER, JUDGE

### BEFORE DIVISION THREE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

Tiffany Traweek appeals from the summary judgment granted in favor of Timothy Smith and Davis & Bell Auction Service, LLC (collectively, "Respondents") on her amended petition for damages. Traweek contends that summary judgment was premature because the circuit court did not allow her sufficient time to conduct discovery on her reformation claim. She also argues that the court's summary judgment did not address her reformation claim. Because the court abused its discretion by not allowing Traweek an adequate period of discovery on her reformation claim, summary judgment is reversed, and the cause is remanded to the circuit court for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 30, 2016, Traweek was a passenger in the back seat of a car driven by her friend, Erika Johnson. Johnson's car collided with the rear of a trailer attached to a vehicle, which was owned by Davis & Bell Auction Service, LLC, and driven by Smith. As a result of this accident, Traweek was rendered unconscious, was in a coma for two months, and suffered severe head trauma and loss of memory and cognitive skills.

Prior to retaining counsel, Traweek received an offer from Johnson's insurance carrier, Missouri Farm Bureau Insurance Company ("Farm Bureau"), to settle her claims against Johnson for the full policy limits. Traweek retained counsel. Traweek's counsel contacted Respondents' insurance carrier, State Farm Insurance Company ("State Farm"), and demanded to settle Traweek's claims against Respondents for the full policy limits. State Farm denied this demand. On October 25, 2017, Traweek filed a petition against Respondents seeking damages for the injuries she suffered in the accident.

On November 1, 2017, Traweek executed a release prepared by Farm Bureau. The language of the release stated, in pertinent part:

> For the Sole Consideration of **Fifty Thousand & 00/100 Dollars ($50,000.00)**, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges **Tonya Schoen & Erica Johnson & John Lamar**[,][1] heirs,

---

[1] John Lamar is Johnson's grandfather. Tonya Schoen lives with John Lamar and is dating his son. The record indicates that Lamar and Schoen were the owners of Johnson's vehicle and were insured under the policy with Johnson.

2

> executors, administrators, personal representatives, estates, agents, insurers, successors and assigns, *and all other persons, firms or corporations liable, or who might be claimed to be liable*, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, costs, expenses, future medical expenses, property damage or damage of any kind sustained or that I may hereafter sustain, known and unknown, both to person and to property, which have resulted or may in the future develop from an accident which occurred on or about the 30th day of June, 2016 at or near Johnson County, Missouri.

(Emphasis added in italics.) Traweek is the only party who signed the release. Traweek's mother and father signed the release as witnesses on the same day and at the same time as Traweek. Traweek recalled reading the portion of the release quoted above but did not realize that she was signing a document that said she was releasing all other persons from liability for the accident. Before Traweek signed the release, Traweek's counsel advised her that she was releasing only Johnson and not Respondents.[2] After Traweek signed the release, Farm Bureau paid her the $50,000 policy limits.

Traweek produced the release to Respondents during the course of discovery on August 8, 2018. Shortly thereafter, on August 20, 2018, Respondents filed a motion for leave to file an amended answer to assert the affirmative defense that Traweek's claims in her petition were barred because she had

---

[2] The record is unclear as to whether counsel had reviewed the release at the time he advised Traweek.

already released Respondents for any claims arising out of the accident. The court granted Respondents leave to file their amended answer.

Upon learning of the language in the original release that could be construed to release Traweek's claims against Respondents, Traweek's counsel contacted the Farm Bureau insurance adjuster and requested an affidavit to set forth the intent of Farm Bureau with regard to whether any other parties besides its insureds were to be released. According to the sworn affidavit of Traweek's counsel, the adjuster admitted that the release was intended to release only Johnson, but the adjuster was not willing to assist Traweek's counsel "in correcting this situation."

On September 24, 2018, Traweek executed a corrected partial release, which was similar to the original release in that it released Johnson, Schoen, Lamar, and their heirs, executors, administrators, personal representatives, estates, agents, insurers, successors, and assigns, but it did not contain the language releasing "all other persons, firms or corporations liable, or who might be claimed to be liable." Again, Traweek was the only party who executed the corrected partial release, and her father and her aunt signed as witnesses. Traweek's counsel mailed the corrected partial release to Farm Bureau in October 2018 and did not receive any response from Farm Bureau. In January 2019, Traweek's counsel hand-delivered the corrected partial release to Respondents' counsel.

4

Respondents filed a motion for summary judgment on February 26, 2019, arguing that the undisputed facts demonstrated that Traweek executed a release that released any claims she may have arising out of the June 30, 2016 accident, including the claim asserted against Respondents in her petition. Respondents further argued that the corrected partial release did not reflect a mutual mistake that would support reformation of the original release. This was the sole ground upon which Respondents sought summary judgment.

On April 9, 2019, Traweek filed a motion for leave to file an amended petition to add a second count in equity seeking reformation of the original release. In the reformation claim in her proposed amended petition, Traweek alleged that she never intended to release anyone but Johnson and the owners of Johnson's vehicle, and that this intent was "clearly indicated by her filing of a lawsuit against [Respondents] prior to her execution of [the original release], and her execution of [the original release] clearly constitutes a mistake." Traweek alleged that the corrected partial release "correctly sets forth the intent of the parties to the Johnson claim and should be used to reform the original Release . . . to conform to the intent of the parties." She contended that reformation of the original release was justified based upon a mutual mistake because there was never an agreement to release any person other than Johnson and the owners of Johnson's vehicle. Respondents did not file any pleading objecting to or opposing Traweek's motion for leave to amend her petition to add the reformation claim.

5

Traweek also filed suggestions in opposition to Respondents' summary judgment motion. In her suggestions, she again asserted her argument that there was a mutual mistake that justified reformation of the original release. Traweek argued that summary judgment would be premature at that time and invoked Rule 74.04(f), which provides that the court can order the continuance of a summary judgment motion under certain circumstances. To support her contention that summary judgment would be premature at that time, she attached her counsel's affidavit explaining that the Farm Bureau adjuster admitted to him that the release was intended to release only Johnson but that Farm Bureau was unwilling to help counsel correct it. Traweek stated that, if the court granted her leave to amend her petition to include a count for reformation, she intended to depose Farm Bureau and would need time to do so.

In their reply, Respondents noted that Traweek was represented by counsel when she executed the original release and that both of her parents were with her and signed the release as witnesses. Respondents argued that, under Missouri law, they, as non-settling tortfeasors, fell under the scope of the original release and, therefore, were intended beneficiaries of the original release. As for Traweek's intention to depose Farm Bureau to establish a mutual mistake, Respondents asserted that Farm Bureau did not sign the original release and was not a party to this case. Respondent argued that Traweek could demonstrate, at most, unilateral mistake and not mutual mistake, which is necessary to support reformation of the original release.

The court held a hearing on Respondents' summary judgment motion on July 2, 2019. At the start of the hearing, the court took up Traweek's motion for leave to file her first amended petition to add a reformation claim. Respondents stated that they did not object to the motion because their motion for summary judgment encompassed the reformation argument as set forth in the pleadings, and they intended to argue that the undisputed evidence would show that there was no evidence to support a reformation claim. The court granted Traweek's motion for leave to file her amended petition.

The court then heard arguments from both parties concerning the enforceability of the original release and whether the corrected partial release constituted a reformation of the original release. Traweek argued that it was too early to grant Respondents' motion for summary judgment considering that she had just been granted leave during the hearing to file an amended petition to raise her reformation claim. She explained that she needed time to conduct discovery on her reformation claim to determine if Farm Bureau was mistaken as to the nature and extent of the original release, because it appeared that Farm Bureau had accepted the corrected partial release that she had executed.

Thirteen days later, on July 15, 2019, the court made a docket entry granting summary judgment in favor of Respondents and directing them to provide the court with a proposed judgment. On July 18, 2019, the court entered summary judgment in favor of Respondents. Traweek filed a motion to reconsider, which the court denied. Traweek appeals.

7

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences from the record. *Wills v. Whitlock*, 139 S.W.3d 643, 646 (Mo. App. 2004).

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id*. Respondents sought summary judgment based upon the affirmative defense of release. Consequently, "to obtain summary judgment, it was necessary for them to present undisputed facts which established that they were entitled to the defense as a matter of law." *Lunceford v. Houghtlin*, 170 S.W.3d 453, 459 (Mo. App. 2005) ("*Lunceford I*"). "If any of the facts necessary to that affirmative defense were subject to genuine dispute, however, summary judgment would be inappropriate." *Id*.

**ANALYSIS**

In Point I, Traweek contends the circuit court erred in granting summary judgment in favor of Respondents because summary judgment was premature, in that the court did not allow her sufficient time to conduct discovery on her reformation claim. Specifically, she argues that she should have been given time to depose Farm Bureau representatives regarding Farm Bureau's intent as to the

8

scope of the original release to support her assertion of mutual mistake, which is necessary to justify reformation.

In her suggestions in opposition to Respondents' motion for summary judgment, Traweek stated that she needed additional time for discovery before the court ruled on the summary judgment motion and invoked Rule 74.04(f), which provides:

> **(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that for reasons stated in the affidavits facts essential to justify opposition to the motion cannot be presented in the affidavits, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The circuit court "has discretion to grant or deny additional time to conduct discovery before ruling on a pending summary judgment." *Matysyuk v. Pantyukhin*, 595 S.W.3d 543, 547 (Mo. App. 2020) (citation omitted). An abuse of discretion occurs only when a ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id*. (citation omitted).

"A party seeking a continuance under Rule 74.04(f) must file an affidavit supporting its motion and must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing." *Duncan v. Dempsey*, 547 S.W.3d 815, 821-22

(Mo. App. 2018) (internal quotation marks and citation omitted). The affidavit must "(1) set out the evidence that the sought-after discovery would adduce; and (2) show that evidence would create a genuine issue of material fact." *Id*. at 822 (quoting *Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 816 (Mo. App. 2012)). "It is insufficient to merely allege further discovery might provide the necessary evidence; rather, [the affidavit] *must describe the evidence*." *Id*. (internal quotation marks and citation omitted).

In the affidavit attached to Traweek's suggestions in opposition to Respondents' summary judgment motion, her counsel explained that he contacted the Farm Bureau adjuster and that the adjuster admitted to him that the original release was intended by Farm Bureau to release only Johnson, but the adjuster was unwilling to assist him in "correcting this situation." Traweek's counsel stated that, if the court granted Traweek leave to amend her petition to include a reformation claim, he intended to depose the Farm Bureau adjuster to elicit this information. The affidavit from Traweek's counsel sufficiently described the evidence that the sought-after discovery would adduce.[3]

---

[3] Respondents contend that Farm Bureau was not a party to the release because it did not sign it; therefore, its intent regarding the scope of the release is irrelevant. We disagree. "[A]lthough a written document is not signed, when one party accept the other party's performance, it gives validity to the instrument and imposes on the accepting party the obligations provided by the agreement." *R.L. Hulett & Co. v. Barth*, 884 S.W.2d 309, 310 (Mo. App. 1994). Here, Farm Bureau presented the original release to Traweek, Traweek signed the release, and, pursuant to the release's terms, Farm Bureau paid her the $50,000 policy limits as consideration. While Farm Bureau may not have signed the release, it is clear that it was a party to the agreement memorialized in the release.

As to the second requirement for a continuance, Traweek asserted that deposition testimony from Farm Bureau's adjuster as to the intent of the scope of the release would create a genuine issue of material fact on her reformation claim. In particular, she contended that evidence that Farm Bureau did not intend for the original release to extinguish Traweek's potential claims against anyone other than its insureds would support her contention that a mutual mistake of fact existed that justified reformation of the original release.

Section 537.060, RSMo 2016, provides that executing a release with regard to one tortfeasor does not "automatically operate to release claims against other joint tortfeasors, in the absence of any language expressly releasing claims against other persons." *Lunceford I*, 170 S.W.3d at 459. If, however, "a release states that it releases 'all claims' against 'any and all persons,' or similar language, it may operate as a general release, and effectively extinguish claims against all tortfeasors, even those who were not parties to the release." *Id*. at 460. The original release that Traweek signed contained such language; therefore, it appeared to release from liability not only Johnson, Schoen, and Lamar, but also Respondents.

Because a release is a type of contract, it is subject to reformation. *Id*. at 464. Reformation is an equitable remedy "by which a party to a contract (including an intended beneficiary) may obtain modification of the terms of the contract such that those terms reflect the parties' original intent in forming the

11

contract." *Id*.[4] "The party seeking reformation must show by clear, cogent, and convincing evidence: (1) the existence of an actual, preexisting agreement and (2) a mutual mistake made by the parties to the agreement." *Hunter v. Moore*, 486 S.W.3d 919, 925 (Mo. banc 2016). The mutual mistake must be "such that both parties 'have done what neither intended.'" *Id*. at 925 (citation omitted).

Generally, whether a mutual mistake has occurred is a question of fact. *Id*. at 926. Reformation can be proven by circumstantial evidence "provided that the natural and reasonable inferences drawn from it clearly and decidedly prove the alleged mistake." *Lunceford v. Houghtlin*, 326 S.W.3d 53, 64 (Mo. App. 2010) ("*Lunceford II*") (citation omitted). "It is enough to show that both parties, at the time of the contract, shared a misconception about a basic assumption upon which they based their bargain." *Id*. Factors the circuit court may consider in determining whether reformation of an instrument is appropriate include "the wording of the contract as signed by the parties, the relationship of the parties, the subject matter of the contract, the usages of the business, the circumstances surrounding the execution of the contract, and its interpretation by the parties." *Hunter*, 486 S.W.3d at 926 (citation omitted).

---

[4] As we explained in *Lunceford I*, while reformation is an equitable remedy that "may not be available in situations where reformation would unfairly affect the rights of third parties," reformation of the release would not unfairly affect the non-settling tortfeasors because "[t]hey were not party to the prior settlement and neither contributed funds to that settlement nor otherwise compensated the [plaintiffs] for their injuries. There is no showing that [the non-settling tortfeasors] relied to their detriment upon the original release." *Lunceford I*, 170 S.W.3d at 464 n.4. "Moreover, the effect of the language of the original release would be to grant [the non-settling tortfeasors] a windfall, by absolving them of potential liability for those injuries without any action or contribution on their part." *Id*.

12

In the *Lunceford* cases, the plaintiffs, like Traweek, signed a general release releasing claims against a settling tortfeasor and "all other persons, firms, associations, and corporations of and from . . . all actions, claims and demands . . . existing or which may hereafter arise out of" the occurrence. *Lunceford I*, 170 S.W.3d at 458. After non-settling tortfeasors raised the affirmative defense of release in the plaintiffs' lawsuit against them, the plaintiffs argued that neither they nor the settling tortfeasor's insurer intended to release anyone who was not a party to the settlement. *Id.* In support of their claim of mutual mistake supporting reformation of the initial release, the plaintiffs presented a corrected release, which released only the settling tortfeasor and his insurer, and affidavits from the settling tortfeasor and his insurer's representative as to their intent concerning the scope of the initial release. *Id.* The circuit court granted summary judgment in favor of the non-settling tortfeasors. *Id.*

We reversed on appeal, finding that there was a genuine issue of material fact on the plaintiffs' reformation claim. *Id.* at 465. Specifically, we found that, through the affidavits, the plaintiffs presented facts suggesting that the initial release "mistakenly and incorrectly memorialized the settling parties' intent" and that the corrected release was "the correct articulation of their intent." *Id.* We explained that, "[i[f those facts would subsequently be proven at trial, they would form a valid basis upon which the trial court could deem the [initial] release reformed in accordance with the . . . corrected partial release." *Id.* Moreover, we noted that, if reformed, "the release would leave reserved claims against [the non-

13

settling tortfeasors], and they could not prevail upon the affirmative defense of release." *Id*.

On remand, the plaintiffs amended their petition to expressly assert a reformation claim. *Lunceford II*, 326 S.W.3d at 60. Following a trial in equity on the plaintiffs' reformation claim, the circuit court found that the corrected release accurately articulated the intent of the plaintiffs and the settling tortfeasor's insurer and found that the initial release was reformed in accordance with the corrected release. *Id*. Therefore, the circuit court ruled that the plaintiffs' personal injury claims against the non-settling tortfeasors could proceed. *Id*. We affirmed the circuit court's decision on appeal, finding that the evidence, which included affidavits and testimony from representatives of the settling tortfeasor's insurer along with the corrected release, was sufficient to support the court's finding of mutual mistake justifying reformation. *Id*. at 64-68.

The difference between *Lunceford I* and this case is that the settling tortfeasor's insurer in *Lunceford I* was willing to provide affidavits stating that the initial release mistakenly and incorrectly memorialized its intent because the insurer never intended to require the plaintiffs to release their claims against anyone but its insured. *Lunceford I*, 170 S.W.3d at 458. The plaintiffs were then able to use those affidavits in their response to the summary judgment motion. *Id*. Here, while Farm Bureau admitted to Traweek's counsel that it did not intend for the release to release from liability anyone other than its insureds, Farm Bureau was unwilling to provide affidavits stating as much. Because Farm Bureau

14

was unwilling to cooperate with Traweek, Traweek sought leave to amend her petition to add a formal claim for reformation so that she could secure deposition testimony from Farm Bureau's representatives.

Thus, while Respondents may be correct that reformation had been an issue in the case for "over ten months" when the court ruled on their summary judgment motion, Farm Bureau's lack of cooperation necessitated Traweek's seeking leave to amend her petition to add reformation as a formal claim. *Compare Lunceford II*, 326 S.W.3d at 60 n.4 (noting that, although the plaintiffs amended their petition to include a formal reformation claim, they were not required to do so, as the settling tortfeasor's insurer had demonstrated an intent to reform the release and had cooperated in the plaintiffs' presentation of evidence on the issue of reformation).  The court did not grant Traweek's motion for leave to file her amended petition until July 2, 2019, which was the same day the court heard arguments on Respondents' summary judgment motion. Affording Traweek only two weeks after granting her leave to amend her petition to add the reformation claim before granting summary judgment did not allow her an adequate period of discovery on this claim.  "[A]s a general matter, 'a motion for summary judgment should be denied, or at least deferred, if the adverse party has not yet had an opportunity to conduct adequate discovery in opposition to the motion.'"  *VBM Corp. v. Marvel Enters., Inc.*, 842 S.W.2d 176, 178 (Mo. App. 1992) (citation omitted).

15

Traweek met 74.04(f)'s requirements for a continuance of the court's ruling on Respondents' summary judgment motion. Her counsel's affidavit sufficiently described that the discovery she was seeking would show that the original release was intended by Farm Bureau to release only Johnson and the owners of Johnson's vehicle. Furthermore, this evidence, when combined with (1) Traweek's deposition testimony that she did not realize she was releasing all other persons when she signed the original release, (2) the indisputable fact that Traweek filed a petition for damages against Respondents one week before signing the release that appeared to release Respondents from all liability, and (3) Farm Bureau's apparent acceptance of the corrected release, would create a genuine issue of fact on the existence of a mutual mistake justifying reformation. Under these circumstances, the court's denying Traweek's request for a continuance to obtain the described discovery and ruling on Respondents' summary judgment motion only two weeks after granting Traweek leave to amend her petition to add her reformation claim constituted an abuse of discretion.[5] Point I is granted.[6]

## CONCLUSION

Summary judgment in favor of Respondents is reversed, and the cause is remanded to the circuit court to allow Traweek an adequate period of discovery

---

[5] We express no opinion regarding the ultimate viability of the reformation claim or whether the proper parties are before the trial court on that claim.

[6] Because we are reversing the court's entry of summary judgment, we need not address Traweek's claim in Point II that the summary judgment failed to dispose of her reformation claim.

16

on her reformation claim before ruling on Respondents' motion for summary judgment.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

17